IN THE UNITED STATES COURT OF FEDERAL CLAIMS

BID PROTEST

———————————————————————
)
EMERGENCY PLANNING )
 MANAGEMENT, INC., )
 )
 Plaintiff, )
 )   No. 19-1024
 v. )
 )   (Judge Thomas C. Wheeler)
UNITED STATES, )
 )
 Defendant. )
———————————————————————)

DEFENDANT'S CROSS-MOTION FOR JUDGMENT ON THE
ADMINISTRATIVE RECORD AND RESPONSE TO PLAINTIFF'S
MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD

                                         JOSEPH H. HUNT
                                         Assistant Attorney General

                                         ROBERT E. KIRSCHMAN, JR.
                                         Director

                                         PATRICIA M. McCARTHY
OF COUNSEL:                              Assistant Director

TRACEY SASSER                            DAVID R. PEHLKE
Assistant General Counsel                Trial Attorney
United States Department of Education    United States Department of Justice
Division of Business and Administrative Law   Civil Division
                                         Commercial Litigation Branch
                                         P.O. Box 480
                                         Ben Franklin Station
                                         Washington, DC  20044
                                         Telephone: (202) 307-0252
                                         E-mail: david.r.pehlke@usdoj.gov

September 4, 2019                        Attorneys for Defendant

## TABLE OF CONTENTS

TABLE OF CONTENTS................................................................................................. i

TABLE OF AUTHORITIES .......................................................................................... ii

BACKGROUND ............................................................................................................ 1

ARGUMENT ................................................................................................................. 2

I.   Legal Standards ...................................................................................................... 2

II.  The BPO Solicitation Does Not Improperly Bundle Requirements Or Fail To
     Preserve The Ability Of Small Businesses To Participate In BPO ........................... 4

     A.   As This Court Previously Determined, The Allegedly Improper Bundling Was
          Necessary And Justified............................................................................................. 5

     B.   ED Properly Considered Small Business Concerns In The BPO Solicitation And
          The Failure To Perform Certain Technical Requirements Primarily Regarding
          Notice Are Not Sufficient To Sustain EPM's Claim .............................................. 8

III. The BPO Solicitation Does Not Improperly Bundle Together Prior Procurements . 12

IV.  The BPO Small Business Participation Plan Is Not Arbitrary .................................. 15

V.   EPM Has Not Demonstrated Entitlement To A Permanent Injunction..................... 17

CONCLUSION............................................................................................................. 18

# TABLE OF AUTHORITIES

**Cases**

*Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343 (Fed. Cir. 2001) ........... 17

*Am-Pro Protective Agency, Inc. v. United States*, 281 F.3d 1234 (Fed. Cir. 2002) ......... 15

*Baird Corp. v. United States*, 1 Cl. Ct. 662 (1983) ................................................................ 4

*Bannum v. United States*, 404 F.3d 1346 (Fed. Cir. 2005) ............................................. 3, 7

*Bromley Contracting Co. v. United States*, 15 Cl. Ct. 100 (1988) .................................... 3

*Califano v. Sanders*, 430 U.S. 99 (1977) ............................................................................ 3

*CHE Consulting, Inc. v. United States*, 552 F.3d 1351 (Fed. Cir. 2008) ........................... 5

*Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402 (1971) ........................... 3

*DMS All-Star Joint Venture v. United States*, 90 Fed. Cl. 653 (2010) .............................. 3

*FMC Corp. v. United States*, 3 F.3d 424 (1993) ................................................................ 17

*FMS Investment Corp. v. United States*, 2019 WL 3451277, No. 19-308C
 (Ct. Cl. July 31, 2019) .......................................................................................... passim

*Geo-Med, LLC v. United States*, 126 Fed. Cl. 440 (2016) ................................................. 6

*Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324
 (Fed. Cir. 2001) .................................................................................................................. 3

*Info. Tech. & Applications Corp. v. United States*, 316 F.3d 1312 (Fed. Cir. 2003) ........ 16

*M.W. Kellogg Co. v. United States*, 10 Cl. Ct. 17 (1986) ................................................... 3

*Monsanto Co. v. Geertson Seed Farms*, 130 S. Ct. 2743 (2010) ....................................... 3

*PGBA, LLC v. United States*, 389 F.3d 1219 (Fed. Cir. 2004) ........................................... 4

*Redland Genstar, Inc. v. United States*, 39 Fed. Cl. 220 (1997) ........................................ 3

*Savantage Fin. Servs., Inc. v. United States*, 595 F.3d 1282 (Fed. Cir. 2010) .................. 5

*Tyler Constr. Grp. v. United States*, 570 F.3d 1329 (Fed. Cir. 2009) ............................ 5, 6

**Statutes**

5 U.S.C. § 702...................................................................................................................... 2

5 U.S.C. § 706.................................................................................................................. 2, 8

15 U.S.C. § 632(o)(1) ........................................................................................................ 12

28 U.S.C. § 1491(b) ............................................................................................................. 2

**Regulations**

13 C.F.R. § 125.2(d)(1)...................................................................................................... 12

**Federal Acquisition Regulation**

FAR 7.107 ....................................................................................................................... 8, 9

Pursuant to Rule 52.1(b) of the Rules of the United States Court of Federal

Claims, defendant, the United States, respectfully requests that the Court grant its motion

for judgment on the administrative record and deny plaintiff Emergency Planning

Management, Inc.'s (EPM) motion for judgment on the administrative record and request

for a permanent injunction.

## **BACKGROUND**

In October 2018, certain private collection agencies (PCA) filed bid protest

actions in this Court challenging the Department of Education's (ED) plan to procure

defaulted loan collection work through phase II of its Next Generation Processing and

Servicing Environment (Next Gen). *See Navient Solutions, LLC v. United States*, Fed.

Cl. Consolid. No. 18-1679 (ECF No. 24). The plaintiffs claimed that they did not know

that work they might be interested in pursuing would be procured through phase II, and

as a result, they did not participate in phase I (only successful phase I bidders could

proceed to phase II). *See, e.g.*, Navient Compl. at ¶¶ 8-10, Fed. Cl. No. 18-1679 (ECF

No. 1). The agency agreed to take corrective action and to resolicit phase II services as a

standalone procurement. Fed. Cl. No. 18-1679 (ECF No. 66). FSA released the revised

solicitations on January 15, 2019. *See* https://www.fbo.gov/index?s=opportunity&mode=

form&id=4996c0ae407d2037afa0ee6ebe8aed76&tab=core&_cview=1 (the Enhanced

Processing Solution (EPS) solicitation, the Optimal Processing Solution (OPS)

solicitation, and the Business Process Operations (BPO) solicitation).

On February 27, 2019, some of the same PCA plaintiffs filed a protest of the new

solicitations, alleging in part that the BPO solicitation in particular represented an

inappropriate bundling of services within a single solicitation. *See FMS Investment Corp.

v. United States*, Fed. Cl. No. 19-308 (ECF No. 1). In amendment 3 to the BPO

solicitation, ED added significant requirements related to the participation of small businesses.  AR 62-63.  Offerors were required to submit Small Business Participation Plans that included a total subcontracting goal for small businesses of 32 percent.  *Id.* The solicitation also requires significant utilization of HUBZone businesses, increasing from 19 to 30 percent within two years, which "may result in total small business subcontracting exceeding 32 [percent].  *Id.*  The solicitation states:  "Offerors are strongly encouraged to exceed the cited goals."  *Id.*  ED communicated regularly with the Small Business Administration (SBA) as it developed the BPO Small Business Participation Plan.  AR 534-50.

On July 16, 2019, the day before oral argument in the *FMS* protest, EPM filed this bid protest, alleging, like the *FMS* plaintiffs, that the BPO solicitation improperly bundled loan servicing and defaulted loan collection work.  *See* Compl.  On July 31, 2019, in *FMS*, the Court denied the PCA plaintiffs' motions for judgment on the administrative record and granted the Government's motion for judgment on the administrative record.  *FMS Investment Corp. v. United States*, No. 19-308, 2019 WL 3451277 (Ct. Cl. July 31, 2019).  The Court determined that the alleged bundling was rationally related to the agency's needs and that ED had provided a "coherent and reasonable explanation" for the alleged consolidation.  *Id.* at *4-5.

## ARGUMENT

### I.  Legal Standards

The proper standard of review in a bid protest is whether the agency action was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.  28 U.S.C. § 1491(b)(1), (4); 5 U.S.C. §§ 702, 706(2)(A); *Impresa Construzioni Geom.*

*Domenico Garufi v. United States*, 238 F.3d 1324, 1332 (Fed. Cir. 2001); *see also Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971), *overruled on other grounds*, *Califano v. Sanders*, 430 U.S. 99 (1977).  When reviewing the agency's procurement decisions, the Court should recognize that the decision is entitled to a "presumption of regularity," *Citizens to Preserve Overton Park*, 401 U.S. at 415 (citations omitted), and the Court should not substitute its judgment for that of the agency.  *Redland Genstar, Inc. v. United States*, 39 Fed. Cl. 220 (1997); *see also M.W. Kellogg Co. v. United States*, 10 Cl. Ct. 17, 23 (1986) (holding that "deference must be afforded to an agency's . . . procurement decisions if they have a rational basis and do not violate applicable law or regulations").  And the procurement officer is "entitled to exercise discretion upon a broad range of issues confronting [her]."  *Impresa*, 238 F.3d at 1332 (citations and quotation marks omitted).

The protester "bears the burden of proving that a significant error marred the procurement in question."  *DMS All-Star Joint Venture v. United States*, 90 Fed. Cl. 653, 661 (2010).  The protestor's burden "is not met by reliance on pleadings alone, or by conclusory allegations and generalities."  *Bromley Contracting Co. v. United States*, 15 Cl. Ct. 100, 105 (1988).  Thus, the Court asks whether, "given all the disputed and undisputed facts, a party has met its burden of proof based on the evidence in the record."  *DMS All-Star*, 90 Fed. Cl. at 661 (citing *Bannum v. United States*, 404 F.3d 1346, 1355-56 (Fed. Cir. 2005).

The Supreme Court has held that an "injunction is a drastic and extraordinary remedy, which should not be granted as a matter of course."  *Monsanto Co. v. Geertson Seed Farms*, 130 S. Ct. 2743, 2761 (2010) (citation omitted).  Even if the plaintiff were to

succeed upon the merits in this case, the Court must also consider three additional criteria before ordering a permanent injunction:  1) "whether the plaintiff will suffer irreparable harm if the court withholds injunctive relief;" 2) "whether the balance of hardships to the respective parties favors the grant of injunctive relief;" and 3) "whether it is in the public interest to grant injunctive relief."  *PGBA, LLC v. United States*, 389 F.3d 1219, 1228-29 (Fed. Cir. 2004) (citations omitted).  The plaintiff must establish an entitlement to injunctive relief by clear and convincing evidence.  *Baird Corp. v. United States*, 1 Cl. Ct. 662, 664 (1983) ("Where injunctive relief is sought, which relief is deemed drastic in nature, the court must exercise great caution and even then, the aggrieved bidder should be made to establish its right to such drastic relief by means of clear and convincing evidence.") (citation omitted).

## II.     The BPO Solicitation Does Not Improperly Bundle Requirements Or Fail To Preserve The Ability Of Small Businesses To Participate In BPO

EPM's first claim for relief alleges that "ED has engaged in unnecessary and unjustified bundling at the expense of small business participation in the federal student loan marketplace."  Compl. ¶ 75.  EPM's claim fails first because, as this Court has already determined, the combination of services sought in ED's BPO solicitation is necessary and justified.  *FMS Investment Corp.*, 2019 WL 3451277, at *4-5.[1]  EPM's claim fails also because, contrary to the allegations in the complaint, the administrative record demonstrates that ED performed much of the work required of an agency that plans to bundle services, including the provision of significant opportunities for small

---

[1]  The Court has granted plaintiff access to the administrative record in *FMS Investment Corp. v. United States*, No. 19-308, so that that administrative record, which is common to the issues presented in EPM's complaint, could be incorporated into this case.  We will refer to that separately filed administrative record as the FMS AR.

businesses within the solicitation via teaming agreements and a robust Small Business

Participation Plan requirement.  The remaining and limited technical requirements that

ED did not perform (*e.g.*, notifying incumbent contractors directly) did not prejudice or

harm EPM.

**A.      As This Court Previously Determined, The Allegedly Improper
            Bundling Was Necessary And Justified**

An agency is not precluded from combining multiple services that were

previously procured separately into a single procurement.  The question is not whether

the agency has combined services, but rather whether any such combination is necessary

to meet the agency's needs.  "[The Small Business Act] does not prohibit all bundling of

contract requirements, but only 'unnecessary and unjustified bundling.'"  *Tyler Constr.*

*Grp. v. United States*, 570 F.3d 1329, 1335 (Fed. Cir. 2009).  An agency enjoys broad

discretion to determine its own needs.  *Savantage Fin. Servs., Inc. v. United States*, 595

F.3d 1282, 1286 (Fed. Cir. 2010).  Therefore, a protester can only establish that a

procurement combining services violates the procurement laws if the protester

demonstrates that the consolidation is not rationally related to the agency's needs.  *CHE*

*Consulting, Inc. v. United States*, 552 F.3d 1351, 1354 (Fed. Cir. 2008).

In *FMS*, this Court held that ED has "provide[d] sufficient justification for

combining loan servicing and default collection work."  *FMS Investment Corp.*, 2019 WL

3451277, at *1.  The Court found that three facts in particular established the required

justification.  First, the Court determined that Next Gen constitutes a rational

implementation of Congress's policy directive in the 2019 Appropriations Act requiring

ED to award no funding for any solicitation for a new federal student loan servicing

environment "unless the environment provides for the full life-cycle of loans from

disbursement to payoff." *Id.* at *3-4; *see also* FMS AR 7.  Second, the Court determined that Next Gen constitutes a rational response to the criticism of certain members of Congress that ED was prioritizing debt collection over borrowers' long-term success.  *Id.* at *4 ("ED reasonably seems to respond to this criticism in formulating Next Gen and its cradle-to-grave loan servicing model."); *see also* FMS AR 14389.  Third, the Court determined that Next Gen constitutes a rational response to the need to decrease the likelihood of borrower confusion, which can result from the use of multiple servicers over the life of a loan.  *Id.* ("The Decision Memorandum sensibly refers to the need to reduce borrower confusion, simplify borrower interactions, and standardize systems and branding as reasons for implementing Next Gen."); *see also* FMS AR 2-3; FMS AR 2507-13; FMS AR 14382-88.  The Court also noted that the presumption of regularity attached to ED's determinations regarding revamping the student loan servicing and collection process, for example, with increased engagement with student borrowers.  *Id.* at *5; *see also* FMS AR 4-5; FMS AR 2496-2502; *see also* FMS AR 20281-87 (detailed pricing proposal worksheets)

On the basis of these findings, the Court held that the combination of services in the Next Gen procurement constituted a rational exercise of ED's discretion.  The primary bases for that holding – Congress's directive in the 2019 Appropriations Act, the complaints from numerous members of Congress, and the need to provide better and more coherent services to borrowers – remain unchanged.  That is, regardless of what manner of private collection agency charges the agency with improper bundling – whether a large agency or a small business agency – the rationale for the combination of services remains the same and equally valid.  The inquiry into the propriety of any

allegedly improper combination of services ends with the determination that whatever combination took place was justified.  *See Tyler Constr.*, 570 F.3d at 1335; *see also Geo-Med, LLC v. United States*, 126 Fed. Cl. 440, 449 (2016).

EPM almost entirely ignores the fact that this Court has already decided this issue. The *FMS* decision is not listed in the table of authorities in EPM's own motion for judgment on the administrative record, and there is no discussion of it in EPM's argument section.  In fact, EPM only mentions the *FMS* decision in its statement of the case, asserting without citation that the Court "left the door open" to a different result for a small business protester.  EPM Br. 15-16.  In the section of its argument entitled "ED's Reasons for Bundling the Solicitation are neither Necessary nor Justified," EPM does not discuss the *FMS* decision,  the 2019 Appropriations Act, or any of the other bases for this Court's prior decision.  *See id.* at 23-29.  As we established above, that blinders-on approach must fail.  The facts that supported the Court's conclusion in *FMS* are equally applicable here.  And, once the challenged combination is determined to be necessary and justified, the inquiry is over.  Indeed, EPM admits this axiom in its complaint: "[B]undling is *only* violative of the [Federal Acquisition Regulation (FAR)] and [the Competition in Contracting Act (CICA)] where it is 'unnecessary and unjustified.'" Compl. ¶ 60 (quoting *Tyler Constr.*, 570 F.3d at 1335) (emphasis added).  This Court has already determined that Next Gen constitutes a rational combination of services. Therefore, that combination of services cannot violate the FAR or CICA.

**B.**     **ED Properly Considered Small Business Concerns In The BPO Solicitation And The Failure To Perform Certain Technical Requirements Primarily Regarding Notice Are Not Sufficient To Sustain EPM's Claim**

EPM alleges that even if the alleged consolidation of services was justified, "ED nevertheless has failed to adhere to the procedural requirements authorizing such action under the FAR." Compl. ¶ 75. This alternative claim should be rejected because it makes little sense within the overall context of a claim alleging improper consolidation, which should turn entirely on whether the consolidation is justified, and because it does not identify a specific harm to EPM that is tied to those procedural requirements. *See Bannum, Inc.*, 404 F.3d at 1357 (stating that if the protestor can show any errors in the procurement process, the protestor must then show that it was "significantly prejudiced" by those errors); *see also* 5 U.S.C. § 706. Moreover, given that the complained of bundling was justified, it is unclear what meaningful relief this Court could provide. *See Weeks Marine, Inc.*, 575 F.3d at 1362 (to establish prejudice in the pre-award context, the protestor must demonstrate a "non-trivial competitive injury which can be addressed by judicial relief."). Requiring ED to complete technical notice requirements regarding a justified combination of services would accomplish nothing but further delay, because the combination of services would of course remain justified and proper. Regardless, the administrative record establishes that ED fulfilled the most significant requirements that an agency must satisfy in connection with a bundling of services.

FAR 7.107 sets forth certain technical requirements that attach to an agency decision to combine services. Those technical requirements center on developing and stating the basis or justification for the proposed bundling, and addressing both the barrier to small business participation as contractors in the procurement as well as the alternative

8

steps taken to maximize small business participation.  *See id.*, *see also* Compl. ¶ 62.
These requirements are interpreted most sensibly as a series of steps an agency must take
to ensure that the proposed bundling is justified and that alternative methods for
including small businesses have been considered.  As we established above, this Court
previously determined that the combination of services in the BPO solicitation is
justified, primarily because Congress directed ED to proceed with a "cradle-to-grave"
approach to loan servicing.  That justification does not evaporate simply because a small
business, as opposed to a large business, has challenged the solicitation.  Both are seeking
a carved-out procurement for default collections that would run afoul of the life-cycle
approach mandated in the 2019 Appropriations Act.

Even setting aside the fact that the challenged combination of services is justified
in order to focus on the specific technical requirements identified in EPM's complaint, it
is evident in the administrative record that ED satisfied most if not all of those
requirements.  As this Court determined in *FMS*, the administrative record documents the
benefits that the agency will derive from the combination of services in the BPO
solicitation.  *FMS*, 2019 WL 3451277 at *4-5.  Not only will the agency satisfy a
congressional mandate, but it also will provide better and more consistent services to
student borrowers.  *Id.*; *see also* FAR 7.107-4(b)(1), (5).  The fact that Congress
mandated the approach that ED is taking also eliminates the possibility of an alternative
procurement approach that would carve out some portion of the life of a loan simply to
accommodate small business concerns.  *See* FAR 7.107-4(b)(6).  The administrative
record establishes that ED conducted extensive market research and that the contracting
officer considered that research when making the determination that a small business set

aside was not possible in this situation, *i.e.*, there were not two small businesses who could perform the full suite of required services.  AR 522-30; FAR 7.107-4(b)(2).  The administrative record further establishes that the Next Gen BPO solicitation not only allows for teaming (*see, e.g.*, AR 540; FAR 7.107-4(b)(3)), but that it also requires offerors to develop and submit a substantial small business participation plan that will provide for 32 percent of the work to be sub-contracted to small businesses (AR 62-63; FAR 7.107-4(b)(4)).  In addition, the solicitation is not restricted and a small business would be free to compete as the prime contractor leading a team of other entities to meet all of the requirements.  EPM never explains why it elected not to take advantage of this opportunity and how it can be prejudiced given its decision not to compete as a team leader.

The administrative record demonstrates that ED's decision to combine certain services under BPO was necessary and justified.  The administrative record further demonstrates that ED conducted market research and considered the potential place of small businesses in the BPO procurement.  AR 522-30; *see also* AR 534-50.  ED then elected to include significant opportunities for small businesses in the BPO solicitation. AR 62-63.   ED fulfilled the requirements of FAR 7.107-4(b).

EPM alleges that the BPO solicitation is improper for the additional reason that ED failed to fulfill certain other requirements in connection with a bundled procurement. Compl. ¶¶ 62, 64, 65, 69.  These requirements generally concern notice:  to the public, to the SBA, and to the incumbent contractors.  *See id.*  EPM does not allege how the technical failure to post a notice specifically of the consolidation of services in BPO harmed it.  EPM similarly fails to allege how it, as a *non*-incumbent, could possibly be

harmed by a failure to notify incumbents of the alleged consolidation of services in BPO.

Finally, the administrative record establishes that ED notified the SBA of the particulars

of the BPO solicitation, and further, that it provided the SBA with drafts of the small

business participation plan portion of the BPO solicitation. AR 534-50 (email exchanges

with Martina Williams, SBA Procurement Center Representative, *see*

https://www.treasury.gov/about/organizational-structure/offices/Mgt/Pages/dcfo-osdbu-

contacts-osdbu.aspx).

The lengthy history of this procurement and the serial protests of it pose an

additional difficulty for EPM's notice claim. It strains credulity to conclude that any

entity interested in performing debt collection work for ED could have been unaware of

the BPO solicitation. Indeed, as the Court knows, the BPO solicitation only occurred

after the Court expressed concerns regarding the consolidation of services in phase two of

the prior, two phase version of the Next Gen solicitation. *See supra* 1. ED responded to

that concern with a relaunch of that portion of Next Gen in the form of the three current

single phase procurements, including BPO. Thus, the combination of services that EPM

now complains of was an aspect of the *prior* procurement, as well as this procurement.

The fact is that the public, the SBA, and all interested parties have known about the

contours of this procurements for some time. Indeed, even setting aside the lengthy

public history of this procurement and the alleged consolidation of services in the BPO

solicitation, the fact that EPM timely filed a protest of the BPO procurement

demonstrates that it suffered no harm from any technical failure to provide specific public

notice of the consolidation.

At best, EPM alleges that ED failed to satisfy certain technical notice requirements, most of which do not even implicate EPM (notice to the SBA, notice to incumbents).  Defendant is not aware of any cases, and EPM offers none, that stand for the proposition that a protester can successfully enjoin a procurement on such a thin basis.  Instead, as discussed above, the cases uniformly establish that the only question in a bundling case is whether the bundling was necessary and justified.  If that is established, then the technical requirements in service of the justification question (*i.e.*, notifying parties potentially interested in challenging the bundling) are irrelevant.  Here, the administrative record establishes that the alleged bundling was necessary and justified, and that ED took affirmative steps to include significant opportunities for small businesses and to engage with the SBA on the small business aspects of the BPO solicitation.  On that basis, and because EPM cannot demonstrate a harm based solely on the technical notice requirements cited in its complaint, the Court should dismiss this protest.

## III.    The BPO Solicitation Does Not Improperly Bundle Together Prior Procurements

EPM's first claim for relief fails for the additional reason that the BPO solicitation does not qualify as bundling.  Pursuant to 15 U.S.C. § 632(o)(1), a "bundled contract" is defined as "a contract that is entered into to meet requirements that are consolidated in a bundling of contract requirements."  The statute defines the term "bundling of contract requirements" to "mean consolidating 2 or more procurement requirements for goods or services previously provided or performed under separate smaller contracts into a solicitation of offers for a single contract that is likely to be unsuitable for award to a small-business concern[.]" 15 U.S.C. § 632(o)(2); *see also* 13 C.F.R. § 125.2(d)(1).  BPO

does not qualify as a bundled solicitation because it is not the sum of two or more prior smaller contracts.  Instead, the BPO solicitation is a component of the larger reimagining of the entire student loan process that Next Gen represents.  *See* AR 533 (notes reflecting FSA position on small business participation in the BPO solicitation).  Within the context of the BPO solicitation, this complete change in approach is most evident in the fact that many activities previously solicited via loan servicer or PCA solicitations are not present in the BPO solicitation.

The BPO awardees will provide far more limited collection services than ED previously procured under PCA contracts.  The simple reason for this is that the BPO solicitation exists within the broader Next Gen environment.  Within that environment many of the technical requirements that a PCA or loan servicer formally had to provide – *e.g.*, automated back office processes and provision of a system to manage servicing or collecting work (FMS AR 73); executing skip-tracing to locate borrowers (*id.*), developing and maintaining records (including payment records)  (FMS AR 42); staff training and compliance (*id.*); developing and maintain risk mitigation systems for account transfers (FMS AR 72) – will not be provided by the BPO awardees.  *See e.g.*, AR 3 ("Solution for Business Process Operations means the personnel and equipment required to execute the objectives and requirement of the resulting contract, *utilizing ED provided established environment and tools*." (emphasis added)); AR 6 ("Solutions shall only utilize the tools provided by other Next Gen solutions (*e.g.*, CRM, contract center agent desktop, printing , mailing, and imaging) or existing FSA solutions, as approved by FSA."); AR 7 ("Solutions shall provide feedback to support continuous improvement of agent materials, training, as well as front-end client applications and beck-end systems,

13

which may be operated by different Next Gen vendors."). Indeed, of those many activities performed specifically under a typical PCA contract, the only activities that remain in BPO are providing a staffed call center and performing basic back office processes that cannot be automated. AR 9-10 (solicitation section C.3.3). The numerous other traditional PCA activities will now be performed under different components of the Next Gen program, as is continually stated throughout the BPO solicitation. *See, e.g.*, AR 6-9. Similarly, the significant requirements placed on PCAs related to the risk associated with large-scale account transfers (FMS AR 72) are eliminated in BPO, because under the life-cycle model there no longer will be any account transfers.

Thus, a BPO awardee will not have to set up and maintain its own website for borrowers to access (as was the case for loan servicers and PCAs). It will not have to maintain a payment processing system (as was the case for loan servicers and PCAs). It will not have to maintain contact and other borrower information for the loans assigned to it (as was the case for loan servicers and PCAs). It will not be solely responsible for training its staff (as was the case for loan servicers and PCAs). Instead, its sole primary responsibility will be to maintain a staffed call center to handle borrower and partner inquiries concerning the loans assigned to it over the full life cycle of those loans.

The limited activities, provided over the entire life of a loan, sought in the BPO solicitation are not a "bundling" of the activities sought in prior loan servicing and PCA solicitations. If BPO bundled together these prior procurements, then the solicitation would represent a massive procurement seeking the provision of, among many other things, a digital environment, automated processing capabilities, training capabilities, skip-tracing capabilities, payment and other records management, and staffed call

14

centers.  Instead, these tasks are being separately procured though under solicitations in Next Gen's life-of-the-loan model.  *See, e.g.*, AR 6-9.

The BPO solicitation does not meet the statutory definition of a bundled solicitation.  EPM's claim, which is based entirely on a presumption that the BPO solicitation bundles together prior loan servicing and PCA contracts, should be dismissed on that basis.

## IV.    The BPO Small Business Participation Plan Is Not Arbitrary

EPM's second claim for relief asserts that the Small Business Participation Plan (SBPP) in the BPO solicitation is arbitrary and capricious.  Compl. ¶¶ 82-102.  This claim advances the same bundling allegations as appear in the first claim for relief.  *See, e.g.*, Compl. ¶¶ 98-102.  This claim also asserts that the SBPP is arbitrary because the requirements call for significant HUBZone participation.  *See* EPM MJAR at 29-32.  According to EPM, this is impermissible because EPM is not a HUBZone small business.  *Id*.  In other words, because HUBZone small businesses *may* be allotted a larger share of work under the SBPP than non-HUBZone small businesses, the procurement is improper.  EPM's claim finds no support in the law or the facts.

The SBPP does *not* limit non-HUBZone participation at the expense of HUBZone participation.  Instead, as EPM ignores, the SBPP includes specific targets for HUBZone participation while explicitly stating that the increase in HUBZone participation "may result in total small business subcontracting exceeding 32 [percent]."  AR 63.  The SBPP then adds that "[o]fferors are strongly encouraged to exceed cited goals."  *Id.*  The unambiguous language of the solicitation fatally undermines EPM's claim.  There is no

conflict between HUBZone and non-HUBZone businesses in the solicitation.  An offeror may submit a SBPP including ample opportunities for all manner of small businesses.

EPM also alleges that the HUBZone targets in the SBPP are arbitrary and effectively pulled out of a hat.  Compl. ¶ 97-96.  This allegation ignores the presumption of regularity and good faith that attaches to agency decisions.  *Am-Pro Protective Agency, Inc. v. United States*, 281 F.3d 1234, 1239-41 (Fed. Cir. 2002) ("[I]t is well established that procurement officials are entitled to a strong presumption of regularity and good faith,").  Moreover, the administrative record demonstrates that ED communicated regarding its SBPP with the SBA and that the SBA expressed enthusiastic approval for the plan.  *See* AR 534-550.  Based on this evidence of direct engagement with the SBA, it is not possible to conclude that the SBPP was arbitrary or "disconnected with the reality of HUBZone companies."  Compl. ¶ 96.

Defendant is not aware of any case, and EPM offers none, in which a procurement was enjoined because of the division of specific small business participation categories within an overall small business participation rate that *has no cap*.  In essence, EPM appears to argue that whatever small business category it belongs to should receive a higher guaranteed target.  There is no basis for that position in the law.  Indeed, as a matter of policy, it would seem to make perfect sense to include specific aggressive targets for the most disadvantaged small businesses in order to guarantee their participation.  The BPO SBPP is not arbitrary.

This claim fails for the additional reason that EPM cannot demonstrate prejudice or any manner of harm due to the SBPP.  In the pre-award context, a protester must show prejudice in the form of a "non-trivial competitive injury."  *Weeks Marine, Inc.*, 575 F.3d

at 1362; *see also Info. Tech. & Applications Corp. v. United States*, 316 F.3d 1312, 1319 (Fed. Cir. 2003)   The SBPP does not eliminate small businesses such as EPM from participation.  To the contrary, it encourages offerors to be as aggressive as possible and to include significant participation from all manner of small businesses.  Nothing in the SBPP bars EPM from receiving a subcontracting opportunity under the BPO solicitation.

## V.  EPM Has Not Demonstrated Entitlement To A Permanent Injunction

The Court must weigh four factors to determine whether EPM is entitled to injunctive relief: (1) whether EPM has succeeded on the merits; (2) whether EPM will suffer irreparable harm in the absence of injunctive relief; (3) whether the balance of hardships to the respective parties favors the grant of injunctive relief; and (4) whether it is in the public interest to grant injunctive relief.  *FMC Corp. v. United States*, 3 F.3d 424, 427 (1993).

As we established above, EPM has not demonstrated any harm, let alone an irreparable harm, that it has suffered or will suffer as a result of any of the procedural shortcomings in ED's issuance of the BPO solicitation identified in the complaint. *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1350 (Fed. Cir. 2001) ("a movant cannot be granted a preliminary injunction unless it establishes *both* of the first two factors, *i.e.*, likelihood of success on the merits and irreparable harm.") (emphasis in original) (citation omitted).  Similarly, EPM has not demonstrated any harm that it has suffered or will suffer as a result of the BPO Small Business Participation Plan.  That Plan, which was developed in communication with the SBA, dramatically increased the portion of work designated for small businesses in the BPO solicitation.  EPM also has not alleged that it was unable to participate in the BPO solicitation as a result of any

aspect of the solicitation.  For example, BPO does not allege that it was unable to team with other entities in an offer.  Indeed, it pointedly avoids making any statements regarding its actual participation or lack of participation in the BPO solicitation.

Conversely, enjoining ED from proceeding with this already long-delayed procurement will cause considerable harm to the agency and its mission.  Congress mandated ED's new approach to student loans, as this Court found when it held the challenged consolidation to be necessary and justified.  An injunction will needlessly frustrate ED's effort to satisfy that mandate.  The balance of harms to the parties weighs in favor of denying injunctive relief.

Finally, throughout the multiple litigations surrounding this procurement the various parties have repeatedly emphasized the general significance of the student debt problem in this country.  The public interest is best served here by allowing ED to proceed according to Congress's mandate.

For these reasons, the Court should deny EPM's request for a permanent injunction.

## **CONCLUSION**

For the reasons stated above, we respectfully request that the Court deny plaintiff's motion for judgment on the record and its request for a permanent injunction, grant the Government's motion for judgment on the administrative record, and enter judgment in the Government's favor.

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

ROBERT E. KIRSCHMAN, JR.
Director

s/ Patricia M. McCarthy
PATRICIA M. McCARTHY
Assistant Director

OF COUNSEL:

TRACEY SASSER                          s/ David R. Pehlke
Assistant General Counsel              DAVID R. PEHLKE
United States Department of Education  Trial Attorney
Division of Business and Administrative Law  United States Department of Justice
                                       Civil Division
                                       Commercial Litigation Branch
                                       P.O. Box 480
                                       Ben Franklin Station
                                       Washington, DC  20044
                                       Telephone: (202) 307-0252
                                       E-mail: david.r.pehlke@usdoj.gov

September 4, 2019                      Attorneys for Defendant