**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

**BID PROTEST**

| | |
|---|---|
| EMERGENCY PLANNING MANAGEMENT, INC., <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant. | No. 19-1024C <br><br> (Judge Thomas C. Wheeler) |

**DEFENDANT'S REPLY IN SUPPORT OF ITS
CROSS-MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD**

Pursuant to the scheduling order in this case, defendant, the United States, submits this reply brief in support of its cross-motion for judgment on the administrative record.

**I.   This Court Does Not Apply Different Standards Based On The Size Of The Protester**

Plaintiff Emergency Planning Management, Inc. (EPM), argues that the Court's decision in *FMS Investment Corp. v. United States* (*FMS*) has no bearing here because "the Government had to meet a lower threshold to survive judicial review." EPM Resp. 2. According to EPM, the rational basis test that the Court applied in *FMS* presents a lower threshold than the Administrative Procedure Act (APA) standard of "'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *Id.* (quoting 5 U.S.C. § 706(2)(A)). EPM cites to no authority in support of the proposition that the rational basis test and the APA standard materially differ in any way. In fact,

EPM ignores the Court's own description of the proper standard in *FMS*, which equates these two standards: "In a bid protest, the Court reviews an agency's decision pursuant to the standards set out in the Administrative Procedure Act.  Under the APA, this Court shall set aside an agency action if it is irrational—that is, if it is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" No. 19-308C, 2019 WL 3451277, at *2 (Fed. Cl. July 31, 2019) (quoting 5 U.S.C. § 706(2)(A)(2012)) (internal citations omitted).

Moreover, the ample case law that discusses and applies the appropriate standard for a small business bundling case, and which EPM ignores, confirms that the primary question before the Court is the same question it faced in *FMS*:  is the proposed bundling necessary and justified, and therefore, rational? *See, e.g.*, *Geo-Med, LLC v. United States*,  135 Fed. Cl. 742, 749 (2017) (concluding in a small business protest that a bundling of services was permissible because the agency had a "rational basis" for the bundling); *Tyler Constr. Grp. v. United States*, 83 Fed. Cl. 94, 103 (2008) (concluding in a small business protest that a bundling of construction services was "rational"), *aff'd* 570 F.3d 1329 (Fed. Cir. 2009).

This core principle of bid protest litigation—that discretionary agency actions are evaluated for reasonableness—also does not disappear where a plaintiff alleges a violation of a specific statute.  In such instances, the protester must demonstrate that the violation was "clear and prejudicial." *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F. 3d 1324, 1333 (Fed. Cir. 2001).  And, the ultimate decision must, once again, turn on the question of reasonableness.  "If the court finds a reasonable basis for the agency's action, the court should stay its hand even though it might, as an original

proposition, have reached a different conclusion as to the proper administration and application of the procurement regulations." *Honeywell, Inc. v. United States*, 870 F.2d 644, 648 (Fed. Cir. 1989); *see also EP Prods., Inc. v. United States*, 63 Fed. Cl. 220, 223 (2005) (stating that the court should only interfere in procurements in "'extremely limited circumstances'" (quoting *CACI, Inc. v. United States*, 719 F.2d 1567, 1581 (Fed. Cir. 1983))).

The Court applied the correct standard in *FMS*—whether the proposed bundling of services is necessary and justified, and therefore, rational—and that is the same standard that applies here.

II. **EPM Fails To Demonstrate That The Alleged Bundling Was Unreasonable Or Otherwise Unnecessary and Unjustified**

EPM argues that the alleged bundling of services is unnecessary and unjustified because the administrative record does not demonstrate a determination that the bundling will generate "'measurably substantial benefits.'"  EPM Resp.10 (quoting 15 U.S.C. § 644(e)(2)).  Here, EPM's argument fails largely due to its misguided effort to turn non-exclusive statutory elements into procurement-killing requirements, and its dogged unwillingness to acknowledge and address directly the findings that this Court has already made.

The statute provides that bundling "*may* be determined as being necessary and justified if" the Government would derive "measurably substantial benefits."  15 U.S.C. § 644(e)(2) (emphasis added).  The statute then provides an expansive list of considerations that such benefits "may include."  *Id.*  That list enumerates:  cost savings, quality improvements, reductions in acquisition cycle times, better terms and conditions, and "any other benefits."  *Id.*  In short, an agency is not required to develop and consider

a list of "measurably substantial benefits." Any benefit the agency reasonably identifies can be sufficient to establish that a proposed bundling is necessary and justified. *See, e.g.*, *Tyler Constr. Grp.*, 83 Fed. Cl. at 101-03 (quoting 15 U.S.C. § 644(e)(2) and then concluding that the agency's reliance on industry recommendations regarding best practices was sufficient to establish that the bundling was "rational").

Here, the administrative record establishes several benefits that the proposed bundling will generate for the agency. The agency reasonably believes that Next Gen will decrease the likelihood of borrower confusion, which can result from the use of multiple servicers over the life of a loan. *FMS*, 2019 WL 3451277, at *4 ("The Decision Memorandum sensibly refers to the need to reduce borrower confusion, simplify borrower interactions, and standardize systems and branding as reasons for implementing Next Gen."); *see also* FMS AR 2-3; FMS AR 2507-13; FMS AR 14382-88; *cf* 15 U.S.C. § 644(e)(2)(B)(ii) ("quality improvements"). The agency also anticipates that Next Gen will improve borrower outcomes and cost effectiveness. FMS AR 4; *cf* 15 U.S.C. § 644(e)(2)(B)(i) ("cost savings"). Next Gen also represents a direct response to Congress's requirement that the Department of Education (ED) proceed with an environment that manages the full life-cycle of loans as well as the pointed complaints of several members of Congress regarding the existing student loan system. *See FMS*, 2019 WL 3451277, at *3-4; *id.* at *4 ("ED reasonably seems to respond to this criticism in formulating Next Gen and its cradle-to-grave loan servicing model."); *see also* FMS AR 7; FMS AR 14389; *cf* 15 U.S.C. § 644(e)(2)(B)(v) ("any other benefits"). Finally, as in *Tyler Construction*, ED's decision to proceed with Next Gen is based on extensive market research and input from industry experts as well as the Consumer Financial

Protection Bureau.  FMS AR 2-4; AR 522-31; *Tyler Constr. Grp.*, 570 F.3d at 1335 (agreeing with this Court's conclusion that the agency reasonably relied on market research when electing to bundle services).

Contrary to EPM's argument, the bases justifying ED's decision, as identified above, in our opening brief, and in this Court's *FMS* decision, are not "post hoc rationalizations."  EPM Resp. 13.  Indeed, the Decision Memorandum marshals many of these individual bases and cites them explicitly as essential to the decision to proceed with Next Gen.  FMS AR 1-13.

For example, ED cited the 2019 Appropriations Act and its "full life-cycle" requirement in its Decision Memorandum.  FMS AR 7.  EPM ignores that this Court has already determined that ED's interpretation of that requirement, as reflected in the Next Gen approach, was a rational one.  *FMS*, 2019 WL 3451277, at *3-4.  Rather than address that finding directly, EPM simply falls back on the assertion that this justification is post hoc and the argument that Congress's directive cannot provide a rational basis for the alleged bundling because "ED did not document [it] as part of the FAR Part 7 procedures."  EPM Resp. 12.  This argument places form over substance.  EPM never explains what precise prejudice flows from the fact that this finding was recorded prior to the release of the BPO solicitation in the Decision Memorandum, as opposed to some other document.  *Impresa*, 238 F. 3d at 1333 (stating that a protester challenging a procurement on the basis of a violation of a statute or regulation must demonstrate that the violation was "clear and prejudicial").

As another example, EPM argues that ED cannot rely on market research to justify the combination of services EPM challenges, because that market research

occurred in 2017 and did not focus on debt collection.  EPM Resp. 13-14.  EPM ignores that ED conducted multiple rounds of market research and identified through that effort "best-in-class collections practices."  FMS AR 4-5 ("Post-Phase I Market Research").  EPM also ignores that as a part of its Post-Phase I Market Research, ED and "subject-matter experts in debt collection prepared and conducted internal briefing materials [*sic*] to review collection performance and consider alternative approaches to improve borrower outcomes and drive improved cost effectiveness."  FMS AR 4.  ED also relied on "responses submitted through Phase I of the Next Generation Financial Services solicitation, to refine and enhance Next Gen FSA in a manner that seeks to greatly improve FSA's delinquency management practices and bring them closer to commercial practice standards."  *Id.*  EPM does not explain why market research from 2017 is irrelevant to a solicitation released in 2018 and relaunched in January 2019.  Regardless, the administrative record demonstrates that ED's market research was an ongoing process that continued even through the receipt of Next Gen proposals.  FMS AR 4.

EPM attempts to sweep away all of the justifications for the alleged bundling, many of which this Court relied on in its decision in *FMS*, with the assertion that they are "post hoc rationalizations."  As demonstrated above, these are not post hoc rationalizations.  These are simply the events and agency actions that preceded and helped to shape the Next Gen procurement strategy.

III.  **EPM Cannot Demonstrate Prejudice From ED's Alleged Failure To Complete Certain Technical Requirements**

As we demonstrated in our opening brief, EPM's argument boils down to the allegation that ED failed to satisfy certain technical requirements regarding bundling.  EPM's response brief inevitably devolves into the same argument as it attempts to

6

maneuver around this Court's findings in *FMS* without actually addressing them.  In its response, EPM argues that ED's failure to follow some of these technical requirements, most notably the notification requirements, prejudiced EPM because it could have complained to and potentially convinced ED to set aside an opportunity for small business debt collectors to participate as primes.  EPM Resp. 16-19.  This argument fails because it is premised on a logical impossibility.

As the administrative record demonstrates, and as this Court determined in *FMS*, Next Gen is premised on a full life-cycle approach to managing student loans.  *See FMS*, 2019 WL 3451277, at *1.  This approach finds support in the 2019 Appropriations Act, ED's multi-phased market research, and its consultations with industry experts.  *Id.* at *3-4.  EPM is a small business debt collector.  It seeks with this bid protest an opportunity to compete for debt collection work alone.  Regardless of prior notice to EPM, what EPM wants—a separate solicitation for debt collection—is logically incompatible with a full life-cycle of the loan approach.  EPM cannot have suffered prejudice in the form of a lost opportunity to convince ED to issue a separate solicitation, because ED could not agree to issue such a solicitation without violating the full life-cycle of the loan approach mandated in the 2019 Appropriations Act and reflected across the entire structure of Next Gen. It is also unclear how EPM can demonstrate prejudice based on a lack of notice given that it was able to file a timely pre-award protest.

**IV.     The Significant Efforts ED Has Made To Generate Opportunities For Small Businesses In BPO Is Relevant**

EPM argues that the significant increases in small business opportunities, via subcontracting and teaming, that ED added to the BPO solicitation after direct discussions with the Small Business Administration are irrelevant to the question before

the Court, because these opportunities are not a part of determining the suitability of a procurement for small businesses as prime contractors. EPM Resp. 15-16. EPM ignores that in *Tyler Construction*, the United States Court of Appeals for the Federal Circuit stated that when evaluating a protestor's allegation that a procurement "was inconsistent with, if not contrary to, the statutory and regulatory provisions involving the federal commitment to aiding small business participation in government procurement, it is important to consider [the agency's] action . . . in helping small businesses to participate in [the] procurement." 570 F.3d at 1336. The court identified the increase in subcontracting requirements and the use of teaming agreements in support of its conclusion that the agency "endeavored, as far as practicable, to comply with the statutory and regulatory requirements and policies for small business participation in government procurement." *Id.*

Here, too, ED proceeded with a necessary and justified combination of services. ED determined that there were not two or more small businesses that could perform the new requirements. AR 522. But, in keeping with "the federal commitment to aiding small business participation in government procurement," ED elected to increase the small business participation requirements for BPO as well as the overall opportunities for small businesses in the solicitation. *See* BPO Amendment 3, AR Tab 1. As in *Tyler Construction*, this demonstrates an effort to satisfy the statutory and regulatory requirements and policies regarding small business participation.

V.  **The BPO Solicitation Does Not Bundle Two Prior Contracts**

In our opening brief, we demonstrated that the BPO solicitation does not bundle together two prior contracts, but rather, it marks a completely new approach to student loan management. EPM's only response to this argument is that because some of the

work that it currently does as a debt collector exists in BPO, it must be a bundled procurement. EPM offers no support for that conclusion. The BPO solicitation does not seek to contract with a group of combined loan servicers/debt collectors. Indeed, a great deal of the work that loan servicers and debt collectors formerly provided will not be secured through BPO. Gov. MJAR section III. The BPO awardees will almost exclusively provide call center support over the full life-cycle of a unique portfolio of loans. *Id.* They will not be servicing the loans (managing a payment system, processing payments, maintaining contact information), and they will not be collecting on defaulted loans (performing skip tracing, initiating wage garnishment procedures, processing payments). The BPO solicitation does not combine former loan servicing work and former debt collection work into a single contract.

## VI. The Small Business Participation Plan Requirements Are Not Irrational

EPM argues that the BPO small business participation plan (SBPP) requirements regarding HUBZone subcontracting are irrational because "no small business offeror (and possibly large business offerors) could reasonably meet the HUBZone goaling requirements." EPM Resp. 20. This argument must be rejected first because EPM did not submit an offer on the BPO solicitation, nor has it presented facts to establish that it sought to submit an offer, but that it could not because of the HUBZone goals. Accordingly, it cannot demonstrate prejudice. *See Weeks Marine, Inc.*, 575 F.3d at 1362 (to establish prejudice in the pre-award context, the protestor must demonstrate a "non-trivial competitive injury which can be addressed by judicial relief.")

EPM also fails to establish why meeting this goal would be more difficult for a small business as opposed to a large business. Both large and small offerors would have access to the tools the Small Business Administration provides to locate small businesses

for possible inclusion in a SBPP. Indeed, ED specifically directed potential offerors to these resources in the questions and answers posted in BPO amendment 6:

> Q: Please explain the Department's basis for establishing a HUBZone goal of 19%, which far exceeds the Department's publicized goal for FY2019.
>
> A: The Department and the Small Business Administration engaged in discussions regarding the HUBZone goal for this solicitation. We recommend that you use the Small Business Administration's Dynamic Small Business Search (http://dsbs.sba.gov/dsbs/search/dsp_dsbs.cfm) to identify HUBZone certified firms.

AR 345.

EPM's assertion that the HUBZone requirements are irrational is entirely speculative. Setting aside the fact that EPM is not an offeror, EPM provides no facts to demonstrate that the tools available to any potential offeror are not sufficient to meet the SBPP requirements. EPM's baseless assertion of irrationality also ignores the fact that the HUBZone goals that EPM challenges were developed through discussions with the Small Business Administration. AR 345. It is not irrational for an agency to consult with the Small Business Administration on a SBPP and to issue guidelines based in part on those discussions.

## CONCLUSION

For these reasons, and for the reasons stated in our cross-motion for judgment on the administrative record, the Court should deny plaintiff's motion for judgment on the administrative record, grant our cross-motion for judgment on the administrative record, and dismiss this case.

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | JOSEPH H. HUNT<br>Assistant Attorney General |
|  | ROBERT E. KIRSCHMAN, JR.<br>Director |
|  | s/ Patricia M. McCarthy<br>PATRICIA M. McCARTHY |
| OF COUNSEL: | Assistant Director |
| TRACEY SASSER<br>Assistant General Counsel<br>United States Department of Education<br>Division of Business and Administrative Law | s/ David R. Pehlke<br>DAVID R. PEHLKE<br>Trial Attorney<br>United States Department of Justice<br>Civil Division<br>Commercial Litigation Branch<br>P.O. Box 480<br>Ben Franklin Station<br>Washington, DC  20044<br>Telephone: (202) 307-0252<br>E-mail: david.r.pehlke@usdoj.gov |
| September 18, 2019 | Attorneys for Defendant |