## IN THE UNITED STATES COURT OF FEDERAL CLAIMS
### BID PROTEST

|  |  |  |
|---|---|---|
| EMERGENCY PLANNING MANAGEMENT, INC., | ) ) ) | **REDACTED VERSION** |
| Plaintiff, | ) ) |  |
| v. | ) ) | Case No. 19-1024 |
| THE UNITED STATES DEPARTMENT OF EDUCATION, | ) ) ) | Judge Thomas C. Wheeler |
| Defendant. | ) ) ) ) |  |

### PLAINTIFF'S RESPONSE TO DEFENDANT'S CROSS-MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD AND REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD

Respectfully submitted,

**MATROSS EDWARDS LLC**

Dated:    September 11, 2019

_/s/ Joshua B. Duvall_
Joshua B. Duvall
Matross Edwards LLC
1717 K Street NW, Suite 900
Washington, DC 20006
202.854.9959
jduvall@matrossedwards.com

*Attorney of Record for*
*Emergency Planning Management, Inc.*

Of Counsel:
Matthew R. Keller
Praemia Law, PLLC
11710 Plaza America Dr., Suite 200
Reston, VA 20190

# TABLE OF CONTENTS

**Contents**                                                                 **Page**

I.    INTRODUCTION                                                                1

II.   ARGUMENT                                                                    2

    A.    The Court's Decision in FMS Investment is Not Controlling and this Court Can Rule for
        EPM Regardless of That Decision                                         2

    B.    The Solicitation Bundles Loan Servicing with Debt Collections Services and ED's
        Reasons for Doing So Are Not Necessary And    Justified and ED's Actions Surrounding this
        Solicitation are Arbitrary, Capricious, Irrational and Contrary to Law     5

    1. The Solicitation is a Bundled Requirement and ED's Reasons For Doing So Are Not
       Necessary And Justified                                                 5

    2. ED Failed to Follow the Mandatory Bundling Procedures Under the FAR During Acquisiton
       Planning and The Court Should Give Little Weight to ED's Post Hoc Justifications    7

    3. As Detailed In The FAR and Title 13, a Solicitation that Provides for Teaming and
       Subcontracting Does Not Mean the Solicitation is Suitable for Award to Small Business   15

    4. The Mandatory Notification Requirements Under the FAR    and Title 13 are Not
       "Irrelevant"                                                            16

    C.    The HUBZone Scheme is Irrational and Lacks Record Support              19

III.  A PERMANENT INJUNCTION IS APPROPRIATE                                       20

V.    CONCLUSION                                                                  23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am-Pro Protective Agency, Inc. v. U.S.*,
281 F.3d 1234 (Fed. Cir. 2002)................................................................................19

*BayFirst Solutions, LLC v. U.S.*,
102 Fed.Cl. 677 (2012)...........................................................................................8, 14

*Benchmade Knife Co. v. U.S.*,
79 Fed. Cl. 731 (2007)...............................................................................................6

*Centech Grp., Inc. v. U.S.*,
554 F.3d 1029 (Fed. Cir. 2009)................................................................................21

*CHE Consulting, Inc. v. U.S.*,
552 F.3d 1351 (Fed. Cir. 2008)...............................................................................2, 5

*Cincom Sys. v. U.S.*,
37 Fed. Cl. 266 (1997)..............................................................................................22

*CW Gov't Travel, Inc. v. U.S.*,
61 Fed. Cl. 559 (2004)..............................................................................................22

*FMS Investment Corp. v. U.S.*,
2019 WL 3451277, No. 19-308C (Ct. Cl. July 31, 2019)................................2, 3, 4

*Impresa Construzioni Geom. Domenico Garufi v. U.S.*,
238 F.3d 1324 (Fed. Cir. 2001)................................................................................19

*Insight Sys. Corp. v. U.S.*,
110 Fed. Cl. 564 (2013)............................................................................................21

*Magellan Corp. v. U.S.*,
27 Fed. Cl. 446 (1993)..............................................................................................22

*PGBA, LLC v. U.S.*,
57 Fed. Cl. 655 (2003)..............................................................................................22

*PGBA, LLC v. U.S.*,
389 F.3d 1219 (Fed. Cir. 2004).................................................................................21

*OMV Med., Inc. v. U.S.*,
219 F.3d 1337 (Fed. Cir. 2000)..................................................................................8

*PricewaterhouseCoopers Public Sector, LLP v. U.S.*,
  126 Fed. Cl. 328 (2004)……………………………………………………….8, 14

*Rig Masters, Inc. v. U.S.*,
  70 Fed. Cl. 413 (2006)………………………………………………………….8

*Savantage Fin. Servs., Inc. v. U.S.*,
  595 F.3d 1282, 1286 (Fed. Cir. 2010)……………………………………*passim*

*Tyler Constr. Grp. v. U.S.*,
  570 F.3d 1329 (Fed. Cir. 2009)………………………………………………10

*United Int'l Investigative Servs., Inc., v. U.S.*,
  41 Fed. Cl. 312 (1998)………………………………………………………...22

*Univ. Research Co. v. U.S.*,
  65 Fed. Cl. 500 (2005)………………………………………………………...23

*Vanguard Recovery Assistance v. U.S.*,
  99 Fed.Cl. 81 (2011)……………………………………………………………8

*Weeks Marine, Inc. v. U.S.*,
  575 F.3d 1352 (Fed. Cir. 2009)……………………………………………….22

**Statutes**

5 U.S.C. § 706…………………………………………………………………......2

15 U.S.C. § 631(j)………………………………………………………………......4

15 U.S.C. § 632(o)…………………………………………………………….6, 15

15 U.S.C. § 644(e)……………………………………………………*passim*

15 U.S.C. § 1692e(14)…………………………………………………………...13

28 U.S.C. § 1491(b)…………………………………………………………...21

**GAO Decisions**

*Sigmatech, Inc.*, B-296401, Aug. 10, 2005, 2005 CPD ¶ 156……………………….......9

*TRS Research*, B-290644, Sept. 13, 2002, 2002 CPD ¶ 159……………….....………………10

**Federal Acquisition Regulation**

FAR § 2.101………………………………………………………………………………*passim*

FAR § 7.104……………………………………………………………………………...8, 18

FAR § 7.107……………………………………………………………………………... *passim*

**Code of Federal Regulations**

13 C.F.R. § 125.1………………………………………………………………………...16

13 C.F.R. § 125.2……………………………………………………………………17, 18

**PLAINTIFF'S RESPONSE TO DEFENDANT'S CROSS-MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD AND REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD**

Plaintiff Emergency Planning Management, Inc. ("EPM") respectfully submits this Response to Defendant's Cross-Motion for Judgment on the Administrative Record and Reply in support of its Motion and Memorandum of Points and Authorities in Support of its Motion for Judgment on the Administrative Record ("MJAR").

## I.     INTRODUCTION

EPM brings this bid protest to address the statutory and regulatory regimes that were specifically enacted to protect small businesses from being excluded from prime contract opportunities on Federal contracts.  In simplest terms, the Solicitation is the byproduct of ED's unwillingness to adhere to mandatory procedural steps that Congress enacted to protect small businesses from unnecessary and unjustified bundling.  That's not fair.  It's also unlawful.  In a Federal procurement system with a rich history of encouraging and protecting small business participation in taxpayer-funded programs, this Court cannot and should not accept ED's wholesale disregard—and *post hoc* justification and downplay—of these all too important procedural safeguards.  As discussed below, this Court should grant EPM's MJAR and enjoin ED from making any awards under the Solicitation.

## II.    ARGUMENT

### A.    The Court's Decision in FMS Investment is Not Controlling and this Court Can Rule for EPM Regardless of That Decision

It is fully within this Court's powers (and it would be correct in so doing) to grant EPM's MJAR despite finding for the Government in *FMS Investment Corp. v. U.S.*, 2019 WL 3451277, No. 19-308C (Ct. Cl. July 31, 2019) because *FMS* was not decided on a *small business bundling* argument; rather, it was decided on a *large business consolidation* argument.  As a result, the Government had to meet a lower threshold to survivie judicial review.  As shown below, it is therefore squarely within this Court's powers to grant EPM's MJAR and to order a permanent injunction.

As an intial matter, though the Government would like this Court to review ED's actions to determine if they are "rationally related to the agency's needs," Gov't XMJAR at 5 (citing *CHE Consulting, Inc. v. U.S.*, 552 F.3d 1351, 1354 (Fed. Cir. 2008)), this Court, under APA review, must set aside an agency action where it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A) (2012); *see also Savantage Fin. Servs., Inc. v. U.S.*, 595 F.3d 1282, 1286 (Fed. Cir. 2010) (stating that in a pre-award bid protest the reviewing Court must set aside improper agency action where the "procurement procedure involved a violation of regulation or procedure.").

In *FMS Investment*, the Court found that because ED provided a "coherent and reasonable explanation" for combining loan servicing and debt collections services, ED's actions did not violate the Competition in Contracting Act ("CICA").  *FMS Investment*, 2019 WL 3451277 at *5 ("[t]herefore, Next Gen does not violate CICA.").  The Government's argument that the Court "already determined, the combination of services

sought in ED's BPO solicitation is necessary and justified," Defendant's Cross-Motion for Judgment on the Administrative Record and Response to Plaintiff's Motion for Judgment on the Administrative Record (ECF No. 22, hereinafter "Gov't XMJAR") at 4, is, however, an attempt to stretch a narrow ruling beyond its elasticity—it's a red herring.

In *FMS Investment*, the Court did not rule on whether ED violated bundling provisions—under the Federal Acquisition Regulation ("FAR"), the Small Business Act, or Title 13 of the Code of Federal Regulations ("Title 13")—that are designed to protect prime small business contractors because the *FMS* plaintiffs did not make that argument as they were not small businesses. While "bundling" and "consolidation" of contract requirements are similar, ***bundling is a subset of consolidation that specifically applies to small businesses***. *See* FAR § 2.101 (Bundling is a "subset of consolidation that combines two or more requirements for supplies or services, . . . that is likely to be unsuitable for award to a small business concern[.]"). In that respect, to protect small businesses from being excluded from prime contract opportunities, Federal agencies must follow mandatory, procedural steps during acquisition planning to demonstrate that a bundled requirement is "necessary and justified." *See* FAR §§ 7.107-3, 7.107-4; *see* 15 U.S.C. § 644(e)(2); *see also* EPM MJAR at 23–29 (discussing the particularized statutory and regulatory requirements the Government must follow in order to determine whether a decision to bundle contract requirements is "necessary and justified.").

Given that EPM, as a small, disadvantaged, service-disabled veteran-owned small business, is challenging the Solicitation as an unlawfully bundled requirement and that *FMS Investment* did not involve a small business challenging violations of law and regulation under the Small Business Act, the FAR, and Title 13, the Government is

simply wrong to conclude that "the rationale for the combination of services [advanced in *FMS*] remains the same and equally valid [in EPM's protest]." Gov't XMJAR at 6. If that were true (which it is not), Congress would not have legislated, and the SBA and FAR Council would not have implemented, additional protections for small businesses to safeguard against unlawful bundling. *See, e.g.*, 15 U.S.C. § 631(j)(3) (declaring that the policy of the U.S. Government is, "to the maximum extent practicable," that Federal agencies shall "avoid unnecessary and unjustified bundling of contract requirements that precludes small business participation in procurements as prime contractors.").

Simply put, this Court cannot accept the Government's position and allow ED to avoid the *mandatory* procedural steps that must take place for an agency to properly demonstrate that this bundled Solicitation is "necessary and justified." If the Court accepts the Government's premise—that it may avoid these requirements all together—it would signal a grave erosion of the important protections afforded to EPM (and other small business contractors) that were specifically enacted to safeguard against unnecessary and unjustified bundling. The Government's attempt to shoehorn its rationale or justification from *FMS Investment* as sufficient to establish that the bundled Solicitation is "necessary and justified" is wrong.

At bottom, the decision in *FMS Investment* did not conclude that ED's actions were "necessary and justified." Because, as shown below, ED failed to follow the mandatory, procedural steps during acquisition plannning imposed upon it under FAR Part 7 to protect small business participation as prime contractors, ED's actions "involved a violation of regulation or procedure." *Savantage Fin. Servs.*, 595 F.3d at 1286. As a result, EPM has suffered prejude because it has been deprived of the opportunity to

compete as a prime contractor and it is squarely with this Court's powers to grant EPM's MJAR and permanently enjoin ED from making any awards under the Solicitation.

### B. The Solicitation Bundles Loan Servicing with Debt Collections Services and ED's Reasons for Doing So Are Not Necessary And Justified and ED's Actions Surrounding this Solicitation are Arbitrary, Capricious, Irrational and Contrary to Law

The Solicitation is a substantially bundled requirement because it combines loan servicing and debt collections services into a procurement greater than $2.5 million in a manner that is unsuitable for prime contract awards to small business concerns. *See* FAR §§ 7.107-3, 7.107-4. Because ED failed to follow the required bundling procedures—during the acquisition plannaing stage—its decision to bundle can not be "necessary and justified." As a result, EPM has suffered prejudicial harm—*i.e.*, it lost the ability to compete as a prime contractor for debt collections services under the Solicitation. As shown below, ED's violation of law, regulation, and public policy—protecting small business prime contractors—compels this Court to grant EPM's MJAR.

### 1. The Solicitation is a Bundled Requirement and ED's Reasons For Doing So Are Not Necessary And Justified

The Solicitation bundles loan servicing with debt collections services and it therefore squarely falls within the statutory and regulatory definition of a bundled requirement. "Bundling" occurs where a solicitation, "(1) consolidate[s] two or more requirements that were previously procured under separate smaller contracts into a single contract, and (2) [is] likely be unsuitable for award to a small business." *CHE Consulting,*

*Inc. v. U.S.*, 125 Fed. Cl. 234, 245 (2016) (quoting *Benchmade Knife Co. v. U.S.*, 79 Fed. Cl. 731, 739 (2007). 15 U.S.C. § 632(o); FAR § 2.101.

Here, the Solicitation contains both loan servicing and debt collections services (*i.e.*, services provided by private colletion agencies ("PCAs") when loans are in "default"). *See, e.g.*, AR 20012 (indicating that offerors are required to provide services when loans are in default); EPM MJAR at 13–14 (noting that loan services and debt collections services are in the Solicitation). ED also confirmed that that debt collections services are in the solicitation during Q&A's. *See* AR 332, 339–340 (Responses to Questions 92, 95, 168, and 170) (notifying offerors thath they are reuiquired to provide debt collections services for accounts in "default").

Despite these facts, the Government argues otherwise for the notion that the Solicitation does not "qualify" as bundling. Gov't XMJAR at 12. For example, the Government contends that the Solicitation is not bundled because contractors would be "*utilizing ED provided established environment and tools*[,]" the "[s]olutions shall only utilize the tools provided by other Next Gen solutions," and the new onmi-channel digital platform will be "operated by different Next Gen vendors."[1] Gov't XMJAR at 12–14. Unfortunately, this exercise in semantics must fail. This Solicition cannot fall outside the definition of a bundled contract requirement simply because, although debt collections services is in the Solicitaiton, *some* of the tasks that PCAs typically provide do not mirror a detailed prior solicitation seeking debt collections sevices. The Government also argues that another solicitation might contain debt collections services. *Id*. at 14. That

---

[1] The Government cites to portions of the "FMS AR" that are not part of the Administrative Record in EPM's protest, namely documents tied to the PCA Solicitation Cancellation. *See* Amended Index to the Administrative Record. EPM has only been granted access to the Next Generation Solicitation documents. *Id*.

may be true, but irrelevant.

For the foregoing reasons and those in EPM's MJAR, the Solicitation bundles loan servicing and debt collections services and is unsuitable for award to small business. The Government's argument that the Solicitation does not qualtify as bundling is irrational. It is also an unreasonable exercise in semantics—*i.e.,* that Federal agencies can avoid the bundling procedures alltogether so long as a soliciation neither mirrors nor is a is carbon copy of a prior solicitation seeking the same services. In practice, such reasoning would hollow out the bundling protections afforded to small business prime contractors. Because, as shown below, ED also failed to follow during acquisition planning the required procedural steps under the FAR, Small Business Act, and Title 13 to demonstrate that the bundled Solicitation is "necessary and justified," EPM has been deprived of an opportunity to compete as a prime contractor and has thus suffered prejudice. Therefore, this Court must enjoin ED from making any awards under the Solicitation and issue permanent injunctive relief.

### 2. ED Failed to Follow the Mandatory Bundling Procedures Under the FAR During Acquisiton Planning and The Court Should Give Little Weight to ED's Post Hoc Justifications

As stated in *Savantage Fin. Servs.*, this Court must set aside improper agency action where the "procurement procedure involved a violation of regulation or procedure." *Savantage Fin. Servs., Inc. v. U.S.,* 595 F.3d 1282, 1286 (Fed. Cir. 2010). Importantly, in bid protests, the Court of Federal Claims has routinely stated that an agency's *post hoc* rationalizations and arguments are to be given little weight. *PricewaterhouseCoopers Public Sector, LLP v. U.S.*, 126 Fed.Cl. 328, 359 (2004) (citing

*Vanguard Recovery Assistance v. U.S.*, 99 Fed.Cl. 81, 102 (2011) ("Post hoc declarations and arguments will be discounted or disregarded."); *see also BayFirst Solutions, LLC v. U.S.*, 102 Fed.Cl. 677, 687 (2012) (citing *Rig Masters, Inc. v. U.S.*, 70 Fed. Cl. 413, 424 (2006) ("We review the materials before the agency when it made its procurement [decision] and cannot accept any 'post hoc rationalizations' offered as the basis for the decision.")).  Moreover, the Court "may not affirm an improperly justified [decision] simply because a rational basis for that [decision] might otherwise exist." *BayFirst Solutions,* 102 Fed.Cl. at 687  (citing *OMV Med., Inc. v. U.S.*, 219 F.3d 1337, 1344 (Fed. Cir. 2000)).  As shown below, ED failed to follow the required bundling procedures ***during the acquision planning*** stages of this Solicitation and ED's *post hoc* justifications are not a substitute for its requirement to follow these procedures.  As a result, EPM suffered prejudice because it lost the ability to compete as a prime contractor and this Court should grant EPM's MJAR.

"Acquisition planning should begin as soon as the agency need is identified." FAR § 7.104.  Indeed, the acquisition planner "***shall coordinate the acquisition plan or strategy with the cognizant small business specialist*** when the strategy contemplates . . . substantial bundling [as is the case here]."  FAR § 7.104(d).  Importantly, at that time, "[t]he small business specialist shall notify the agency Office of Small and Disadvantaged Business Utilization or the Office of Small Business Programs if the strategy involves—

> (1) Bundling that is unnecessary or unjustified; or
> (2) Bundled or consolidated requirements not identified as such by the agency (see 7.107).

*Id.*

Under this Solicitation, ED identified a need in late 2018 when it concluded that it wanted to procure debt collections services along with loan servicing. It was at that time, during acquisition planning for this Solicitation, that ED was required to follow the relevant FAR Part 7 bundling procedures (including various notification and documentation requriements) to determine if this bundled Solicitation is "necessary and justified."

The Small Business Act, the FAR, and relevant parts of Title 13 protect small business contractors from unnecessary and unjustified bundling (as is the case here) because they provide for ***specific and particularized procedures during acquisition planning*** that Federal agencies must satisfy to justify bundling. For a bundled solicitation to be lawful, agencies are required to conduct extensive market research and take other important procedural steps during the acquisition planning process to establish that bundling procurement requirements is "necessary and justified." *See* 15 U.S.C. § 644(e)(2); *see* FAR § 7.107-3; *see* FAR § 7-107-4 (additional requirements for "substantial bundling"); *see also* EPM MJAR at 23–29. The reason is simple: Congress sought to protect and encourage prime small business participation in Federal contracts and the only safeguard small businesses have against unreasonable and unnecessary bundling is for Federal agencies to satisfy these mandatory, procedural requriements during acquisition planning.

Where an agency fails to follow the required procedures to demonstrate that a bundled requirement is "necessary and justified," the bundled solicitation is unlawful. *Sigmatech, Inc.*, B-296401, Aug. 10, 2005, 2005 CPD ¶ 156 (sustaining a protest where the agency failed to follow the required FAR Part 7 procedures to determine whether

bundling was "necessary and justified"); *see also TRS Research,* B-290644, Sept. 13, 2002, 2002 CPD ¶ 159 (sustaining a protest because of improper bundling and because the agency failed to follow the proper notification requirements); *see Tyler Constr. Grp. v. U.S.,* 570 F.3d 1329, 1335 (Fed. Cir. 2009).

In that regard, law and regulation provide that bundling is "necessary and justified" if, when compared to meeting those requirements without bundling them, the agency would receive "measurably substantial benefits" as a result of the bundling.  15 U.S.C. § 644(e)(2); FAR § 7.107-3.  "Measurably substantial benefits," for example, includes:

> (1) Cost savings;
> (2) Price reduction;
> (3) Quality improvements that will save time or improve or enhance performance or efficiency;
> (4) Reduction in acquisition cycle times, or
> (5) Better terms and conditions.

*Id.*

To that end, the acquisition planning portion of the Administrative Record does not demonstrate that these procedures were followed or that ED gave any consideration as to how it will obtain "measurably substantial benefits" to justify its decision to bundle the Solicitation.  ED's failure to follow the mandatory procedures under FAR § 7.107-3 is arbitrary, capricious, and a clear violation of law and regulation because these procedures were not followed during acquisition planning for this Solicitation.  *Savantage Fin. Servs.,* 595 F.3d at 1286.

Further, where an agency is considering "substantial bundling" which for ED procurements means bundling that results in a contract with an estimated value in excess of $2.5 million (which is the case under the Solicitation), ED, in addition to addressing

the requirements under FAR§ 7.107-3, must also document in its acquisition strategy:

> (1) The specific benefits anticipated to be derived from substantial bundling;
> (2) An assessment of the specific impediments to participation by small business concerns as contractors that result from substantial bundling;
> (3) Actions designed to maximize small business participation as contractors, including provisions that encourage small business teaming;
> (4) Actions designed to maximize small business participation as subcontractors (including suppliers) at any tier under the contract, or order, that may be awarded to meet the requirements;
> (5) The determination that the anticipated benefits of the proposed bundled contract or order justify its use; and
> (6) Alternative strategies that would reduce or minimize the scope of the bundling, and the rationale for not choosing those alternatives.

FAR § 7.107-4(b).

In this respect, the acquisition planning portion of the Administrative Record does not demonstrate that these procedures were followed to make a showing that bundling this Solicitation is "necessary and justified." ED's failure to follow the procedures under FAR § 7.107-4(b) is arbitrary, capricious, and a clear violation of law and regulation because this procedure was not followed during acquisition planning for this Solicitation. *Savantage Fin. Servs.*, 595 F.3d at 1286. Even though ED failed to follow these procedures, the Government is instead relying on *post hoc* justifications to support its flawed approach. The Court should give these arguments little weight because they were not part of ED's decision-making during acquisition planning. Even if the Court does give credence to these arguments, they are irrational nonetheless.

The Government asserts "the administrative record establishes that ED fulfilled the most significant requirements that an agency must satisfy in connection with a bundling of services." Gov't XMJAR at 8. For example, the Government points again to findings in the *FMS Investment* decision as justification for satisfying FAR § 7.107-4(b)(1) and (5), arguing that that "[n]ot only will the agency satisfy a congressional

mandate, but it also will provide better and more consistent services to student borrowers." Gov't XMJAR at 9 (citing FAR § 7.107-4(b)(1) (anticipated benefits from substantial bundling), (5) (determination that benefits are justified)). The Government likewise argues that, with the 2019 Appropriations Act, Congress elimintated the possibility of an alternative approach. *Id.* (citing FAR § 7.107-4(b)(6) (alternative strategies to "reduce or minimize the scope of the bundling, and the rationale for not choosing those alternatives."). These arguments are irrational and must fail for two reasons.

*First*, ED's decision to construe the 2019 Appropriations Act in such a manner does not mean that the Act conferred *carte blanche* authority for ED to side-step the particualrized, mandatory procedures regarding bundling of contract requirements. Moreover, the Administrative Record is silent on any possible alternative strategies to procuring loan servicing and debt collections services in a bundled manner. Even though ED claims to have a reason for satisfying these requirements (which we think is both *post hoc* and irrational), ED did not document them as part of the FAR Part 7 procedures during the acquisition planning stage prior to the release of this Solicitation.

*Second*, the omni-channel digtal platform—that is being procured under a different solicitation—is what ED has envisioned to provide "consistent services to borrowers." The fact that contractors providing loan servicing and debt collections services behind the scenes (the call centers) doesn't change that fact that the digital platform is what is achieving that goal of consistency. Indeed, even if providing "consistent services" has anything to do with contractors working as one, unified brand, *see* AR 126 (working under one brand), AR 492 (same), that still does not change the fact

that PCAs will need to comply with the Fair Debt Collections Practices Act, which requires, among other things, that PCAs use their "true name" when contacting borrowers. 15 U.S.C. § 1692e(14) (noting various false and misleading practices that PCAs may not engage in, including the "use of any business, company, or organization name other than the true name of the debt collector's business, company, or organization.").

To that end, given the practical implementation of the NextGen environment and that the Solicitation contains loan servicing and debt collections services, it is irrational to conclude how the bundled Solicitation will provide for "consistent services to student borrowers" when all of the contractors will be working behind the omni-channel digital platform. Even if ED satisfied this requirement (which we believe it did not), ED did not document this benefit during the acquisition planning stage prior to the release of this Solicitation.

The Government next points to market research as a demonstration that it satisfied the requirement that it document "assessment of the specific impediments to participation by small business concerns as [prime] contractors that result from substantial bundling." Gov't XMJAR at 9–10 (citing FAR § 7.107-4(b)(2)). That is irrational for two reasons.

*First*, the market research on which ED relied was conucted in 2017 and premised on a ***procurement that did not contain debt collections services***. EPM MJAR at 10; AR 14271–14380. *Second*, and moreover, the record citation that the Government points to, AR 522–30, which indicates that "there were not two small businesses who could perform the full suite of required services," is also irrational. The document is bolstered by incomplete (stale) market research and notes that an award is not suitable for small

businesses because the agency would be making a "single award." AR 522. That is not true. The Solicitation clearly calls for multiple awards. *See* AR 23266 (multiple awards); *see also* AR 324 at Question 24 (same). Regardless, this is another *post hoc* rationalization to justify the fact that ED did not follow the correct procedures under FAR Part 7.[2]

Simply put, ED's attempt to satisfy these mandatory procedures *post-hoc* cannot withstand judicial scutiny. *See PricewaterhouseCoopers*, 126 Fed.Cl. at 359; *see also BayFirst Solutions,* 102 Fed.Cl. at 687 (noting that the Court "may not affirm an improperly justified [decision] simply because a rational basis for that [decision] might otherwise exist."). If it does withstand judicial review, then these important acquisition planning procedures would ring hollow because ED (and other Federal agencies) would only need to justify their actions during litigation rather than following these procedures during acquisition planning. That is not what Congress intended. That approach also harms small businesses. That approach harmed EPM.

At bottom, as discussed herein and in EPM's MJAR, the acquisition planning portion of the Administrative Record does not contain any record evidence that ED carried out any of the procedural requirements for bundling under FAR Part 7, the Small Business Act, or Title 13. The Government's attempt to erode these important small business protections by justifying them ***outside of the acquistion planning timeframe*** is a *post hoc* argument to justify its unlawfully bundled Solicitation. As a result, ED has not

---

[2] To the extent that ED relies on an unsigned, undated document (not on ED letterhead) that was created after the acquisition planning portion of the Administrative Record was furnished under *FMS Investment* to show that a set-aside was not possible, that document likewise refers to market research that was conducted in 2017 for a prior procurement that did not involve debt collections services.

demonstrated that the bundled Solicitation is "necessary and justified." Therefore, EPM has suffered prejudice because ED deprived it of the opportunity to compete as a prime contractor for debt collections services and this Court must enjoin ED from making any awards under the Solicitation and issue permanent injunctive relief.

### 3. As Detailed In The FAR and Title 13, a Solicitation that Provides for Teaming and Subcontracting Does Not Mean the Solicitation is Suitable for Award to Small Business

The Small Business Act provides that the Federal government, "to the maximum extent practicable" shall "avoid unnecessary and unjustified bundling of contract requirements that precludes small business participation in procurements as prime contractors." *Id.* (emphasis added). For a bundled requirement to be unsuitable for award to small businesses, both statute and regulation provide several factors that agencies should consider when making such a determination:

> (A) the diversity, size, or specialized nature of the elements of the performance specified;
> (B) the aggregate dollar value of the anticipated award;
> (C) the geographical dispersion of the contract performance sites; or
> (D) any combination of the factors described in subparagraphs (A), (B), and (C).

15 U.S.C. § 632(o)(2); *see* FAR § 2.101; *see also* EPM MJAR at 21–22 (discussing why the Solicitation is unsuitable for award to small businesses).

Importantly, the FAR and Title 13 specifically exclude small business teaming arrangements from the bundling suitability analysis—recognizing that an agency should not be permitted to force teaming as a way around bundling restrictions. FAR § 2.101 (bundling occurs when efforts are combined in a manner "that is likely to be unsuitable for award to a small business concern (***even if it is suitable for award to a small business***

*with a Small Business Teaming Arrangement*)"); 13 C.F.R. § 125.1 (bundling occurs when efforts are combined in a manner "that is likely to be unsuitable for award to a small business concern (but may be suitable for award to a small business with a Small Business Teaming Arrangement) . . . .").

Here, the Government's position is that the Solicitation provides for small business participation in two manners: (1) via teaming arrangements and (2) via a subcontracting plan. *See* Gov't XMJAR at 4–5 (stating that the Solicitation provides "significant opportunities for small businesses within the solicitation via teaming agreements and a robust Small Business Participation Plan requirement."). According to the Government, this is enough. Unfortunately, these aspects of the Solicitation, while commendable, are insufficient to meet the standard set forth under the bundling regulations. The Government ignores that point.

As stated above, FAR § 2.101 and 13 C.F.R. § 125.1 expressly provide that the small business suitability analysis does not take into consideration teaming arrangements. Subcontracting and teaming are separate issues.

### 4. The Mandatory Notification Requirements Under the FAR and Title 13 are Not "Irrelevant"

Together, the notification requirements under the FAR and Title 13 are critical to ensuring that small businesses are protected from an agency's unnecessary and unjustified bundling of contract requirements. Given that many of the required notifications occur during the acquision planning stages of a procurement, they are perhaps some of the *most important protections* afforded to small businesses. Simply put, proper notification *at the time the agency decides to bundle a requirement* (*i.e.*,

before a solicitation is released) provides for the SBA and small businesses to have an opportunity to voice their input and discuss possible alternative stragtegies to bundling. It also allows small businesses to prepare for any properly justified bundled requrement. Indeed, the result of such communications could even be incoporated into the agency's documented rationale regarding its decision to either bundle or not bundle.

Here, the Government unreasonably attempts to marginalize the notification requirements. *See generally*, Gov't XMJAR at 10–12. Specifically, the Government's position is if bundling is justified (after the fact), the "technical requirements in service of the justification question (i.e., notifying parties potentially interested in challenging the bundling) are *irrelevant*." *Id.* at 12. To the extent that the Government suggests that the litigation surrounding NextGen satisfies these notification reqruiements, Gov't XMJAR at 11, that is irrational and inconsistent with the plain language of the FAR and Title 13.

Simply, technical requirements of FAR Part 7 and Title 13 are not "irrelevant" because they employ mandatory language (e.g., "shall notify" and "must notify"). *See* FAR § 7.107-5(a)(1) ("[t]he contracting officer *shall notify* each small business performing a contract that it intends to bundle the requirement *at least 30 days prior to the issuance of the solicitation for the bundled requirement*.") (emphasis added); *see also* 13 C.F.R. § 125.2(d)(5) (same). ED made no such notifications. Similarly, as discussed above, because this Solicitation is a "substantially bundled" requirement, the acquisition planner was also required to "coordinate the acquisition plan or strategy with the cognizant small business specialist" and the "small business specialist shall notify the agency Office of Small and Disadvantaged Business Utilization or the Office of Small Business Programs if the strategy involves -

-17-

        (1) Bundling that is unnecessary or unjustified; or
        (2) Bundled or consolidated requirements not identified as such by the agency.

FAR § 7.104(d). This important notification also did not occur. Indeed, all of the notification requirements, taken together, serve to protect small businesses, like EPM, because they provide the time for small business to engage with Federal agencies prior to the publication of a bundled solicitation.[3]

Nothing in the FAR suggests that the FAR Part 7 procedural requirements is for the sole purpose of establishing the justification to bundle nor does the FAR suggest that these notification requirements are optional once justification is established. These important notification requirements go hand-in-hand with Title 13 because, among the many notification requirements, acquisition planners are required to "[p]rovide opportunities for the *participation of small business concerns during acquisition planning processes and in acquisition plans*." 13 C.F.R. § 125.2(c)(1)(vi); *see also* EPM MJAR at 25–26. Under this Solicitation, that did not occcur.

At bottom, ED's failure to properly follow the required notification requirements is irrational and contrary to law and regulation. As a result, EPM suffered prejudice because had ED followed these notification requirements, EPM—and SBA, OSDBUs, and PCRs—would have at least had the opportunity to voice their concerns regarding the proposed bundled contract requirements and to discuss possible alternatives to achieving ED's procurement goals without harming small business participation at the *prime*

---

[3] To be sure, had ED conducted market research from December 2018–January 2019 when it decided to procure debt collections services (together with loan servicing), it not only would have had an opportunity to discuss with, or receive, information about the capabilities of small business PCAs and loan servicers but also it would have had an opportunity to follow the FAR and document its reasons chosing its preferred approach.

contact level. Therefore, this Court must grant EPM's MJAR and issue permanent injunctive relief.

### C. The HUBZone Scheme is Irrational and Lacks Record Support

As an initial matter, contracting officers "are entitled to exercise discretion upon a broad range of issues confronting them in the procurement process." *Impresa Construzioni Geom. Domenico Garufi v. U.S.*, 238 F.3d 1324, 1332 (Fed. Cir. 2001). Similarly, the presumption of regularity is afforded to agency decisions. Gov't XMJAR at 16 (citing *Am-Pro Protective Agency, Inc. v. U.S.*, 281 F.3d 1234, 1239-41 (Fed. Cir. 2002)). Even with that backdrop, the small business subcontracting scheme lacks record support and is therefore not rational.

Here, the Solicitation "provides that contractors meet an initial HUBZone subcontracting goal of 19%, which is more than six times greater than ED's published FY2019 annual subcontracting goal of 3%" and that it also "requires contractors to escalate the 19% HUBZone goal in the base year to 25% within two years of award and then to 30% within three years of award." AR 63; EPM MJAR at 31. The HUBZone subcontracting goals, moreover, are part of the evaluation scheme as the Solicitation cautions offerors that they "will not be eligible for award if it fails to submit an acceptable SBPP." *Id*. Unfortunately, this drastic deviation not attainable and EPM would therefore be prejudiced in not being able to meet these goals (assuming, of course, that the Solicitation is also unbundled).

The record does not reflect any market research nor does it reflect any explanation whatsoever regarding ED's decision to abruptly change the small business subcotracting

scheme in Amendment 3. The record likewise does not reflect any rationale or reasoned decision-making for why ED significantly deviated from its annual subcontracting goals in creating this small business subcontracting scheme. The only record document that the Government cites to is that the "SBA expressed enthusiastic approval for the plan." Gov't XMJAR at 16; *See* AR 548. Even attaching the presumption of regularity to this agency action, a closer inspection reveals that the SBA PCR's input was after ED had already published the Solicitation on FedBizOpps. AR 548 ("FSA already has it in motion with FedBizOpps, so hopefully it still looks good to you as the horse is halfway out the barn!").

At bottom, EPM has not and is not asking for a "higher guaranteed target" as the Government wrongfully believes, Gov't XMJAR at 16, and EPM is not making the argument that "[t]he SBPP [] eliminate[s] small businesses such as EPM from participation." *Id*. To the contrary, EPM's argument is that no small business offeror (and possibly large business offerors) could reasonably meet the HUBZone goaling requirements and EPM is quite clearly prejudiced by this action. To that end, the Government misconstrues the "non-trivial competitive injury" prejudice inquiry that EPM clearly meets. Such an injury does not require EPM to be eliminated from participation, as the Government contends, it merely requires that there is a more than trivial injury to ***EPM's ability to compete***. The unrealistic HUBZone goaling scheme does exactly that. EPM has suffered prejudice and the Court must grant EPM's MJAR.

## III.    A PERMANENT INJUNCTION IS APPROPRIATE

Under the Tucker Act, the Court "may award any relief that [it] considers proper,

including declaratory and injunctive relief" in bid protest cases. *See* 28 U.S.C.
§ 1491(b)(2); *see also Centech Grp., Inc. v. U.S.*, 554 F.3d 1029, 1037 (Fed. Cir. 2009).
In deciding whether to award injunctive relief, this Court considers:

> (1) whether the plaintiff has succeeded on the merits;
> (2) whether the plaintiff will suffer irreparable harm without an injunction;
> (3) whether the balance of the hardships favors an injunction; and
> (4) whether an injunction is in the public interest.

*See PGBA, LLC v. U.S.*, 389 F.3d 1219, 1228–29 (Fed. Cir. 2004) (citation omitted). For
the reasons set forth below, EPM submits that it is entitled to the permanent injunctive
relief sought.

*First*, for the forgoing reasons discussed herein and in EPM's MJAR,
respectfully, this Court should find that EPM has succeeded on the merits.

*Second*, given that the Solicitation has bundled loan servicing and debt collections
services in a manner that is not "necessary and justified," EPM has been prejudiced as it
is unable to compete as a prime contractor because the Solicitation is unsuitable for
award to a small business.    *Insight Sys. Corp. v. U.S.*, 110 Fed. Cl. 564, 582 (2013).
Indeed, monetary loss which threatens the very existence of a concern's business also
constitutes irreparable harm sufficient to establish entitlement to injunctive relief.  *See,
e.g., Wis. Gas Co. v. F.E.R.C.*, 758 F.2d 669, 674 (D.C. Cir. 1985).

*Third*, the balance of hardships weighs in favor of granting a permanent
injunction because there is no reason to believe that the this Solicitation is an emergency
procurement, or that ED would be adversely impacted if the issuance of the awards under
the Solicitation is delayed for a limited amount of time.  Further, the tasks to be
performed by the loan servicers and PCAs under this Solicitaiton will not even begin
until the omni-channel digital platform has been completed.  Moreover, any delays to the

implementation of awards under this Solicitation are a direct result of ED's improper and unlawful conduct, as outlined above. ED chose to act unlawfully, arbitrarily, capriciously, and without a rational basis. Thus, to the extent that there is any burden to be borne, ED should be the party to bear it. *See, e.g. PGBA, LLC v. U.S.*, 57 Fed. Cl. 655, 663 (2003) (finding that harm caused to the Government by inconvenience or a delay in performance is generally less significant than the harm caused to a bid protester if the protest is ultimately sustained).

*Fourth*, generally, the public interest is served by ensuring fair and open competition in the procurement process. *Cincom Sys. v. U.S.*, 37 Fed. Cl. 266, 269 (1997) (citing *Magellan Corp. v. U.S.*, 27 Fed. Cl. 446, 448 (1993). This is particualrly true where Congress has specifically enacted legislation to protect small businesses from unnecessary and unjustified bundling. Moreover, it is a well-settled principle that there is an overriding public interest in preserving the integrity of the Federal procurement process by requiring the Government to follow its procurement statutes and regulations. *CW Gov't Travel, Inc. v. U.S.*, 61 Fed. Cl. 559, 576 (2004) (citing *United Int'l Investigative Servs., Inc., v. U.S.*, 41 Fed. Cl. 312, 323 (1998)) (holding that the "public has a strong interest in preserving the integrity of the procurement process."). Additionally, this Court has acknowledged that the public interest is served by, "fostering increased small business participation," in Federal procurement. *Weeks Marine, Inc. v. U.S.*, 79 Fed. Cl. 22, 37 (2007). Finally, ED's strong push towards quickly implementing the Solicitation may, in ED's estimation, result in a more convenient procurement mechanism from the perspective of administrative convenience; however, this Court has long recognized that the public interest, "is not well-served when contracting officials

rush to save a few weeks and end up delaying contracts by many months," or in this case years. *Univ. Research Co. v. U.S.*, 65 Fed. Cl. 500, 515 (2005).

As set forth above, ED has acted arbitrarily and capriciously, abused its discretion, violated the law, and infringed upon the rights of EPM (and other small businesses) to participate as a prime contractor under the Solicitation. Issuance of a permanent injunction will thus serve the public interest by protecting the integrity of small business participation as prime contractors in a competitive procurement. Therefore, it is in the public interest for the Court to issue permanent injunctive relief.

## V.      CONCLUSION

In sum, the Government claims that it may move forward with the bundled Solicitation because it is okay to justify bundling *post hoc* during litigation rather than justify it by following the procedural steps that ED was required to take during acquisition planning to demonstrate that the bundled Solicitation is "necessary and jusitified." In other words, to the Government, the ends justify the means. If that position is upheld here, then in addition to allowing Federal agencies to side-step bundling procedures designed to preserve small business participation as prime contractors, they will also no longer be deterred from skipping any of the other procedural steps in Federal procurement designed to prevent unwise or improper agency actions.

For all of the foregoing reasons and the reasons discussed in EPM's MJAR, EPM respectfully requests that this Court grant its MJAR and permanently enjoin ED from making awards under the Solicitation unless and until ED conforms with the

-23-

requirements under law and regulation, including the FAR, the Small Business Act, and Title 13 as well as with this Court's order granting EPM's MJAR. Finally, EPM requests that this Court grant any such other relief, including awarding attorneys' fees and costs, as the Court deems just and proper.

Respectfully submitted,

**MATROSS EDWARDS LLC**

Dated: September 11, 2019

_/s/ Joshua B. Duvall_

Joshua B. Duvall
Matross Edwards LLC
1717 K Street NW, Suite 900
Washington, DC 20006
202.854.9959
jduvall@matrossedwards.com
_Attorney of Record for_
_Emergency Planning Management, Inc._

Of Counsel:
Matthew R. Keller
Praemia Law, PLLC
11710 Plaza America Dr., Suite 200
Reston, VA 20190

## CERTIFICATE OF SERVICE

I hereby certify that, on September 11, 2019, a true and correct copy of the foregoing was electronically filed with the Clerk of Court using the Court's Case Management/Electronic Case Files ("CM/ECF") system, which will send notification to all counsel of record in this matter who are registered with the Court's CM/ECF system.

/s/ *Joshua B. Duvall*
Joshua B. Duvall