# In the United States Court of Federal Claims

No. 19-1024

(Filed: October 2, 2019)

| | |
|---|---|
| \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\* * EMERGENCY PLANNING * MANAGEMENT INC. * * * Plaintiff, * * v. * * THE UNITED STATES, * * Defendant. * * \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\* | Pre-award Bid Protest; Rational Basis Standard; Competition in Contracting Act; Bundling; Consolidation; Agency Discretion; Small Business Act; Motion for Permanent Injunction; 28 U.S.C. § 1491(b); Standard for Injunctive Relief. |

*Joshua B. Duvall*, Matross Edwards, LLC, Washington, D.C., with whom was *Matthew R. Keller*, Praemia Law, PLLC, Reston, Virginia, for Plaintiff.

*David R. Pehlke*, Trial Attorney, with whom were *Joseph H. Hunt*, Assistant Attorney General, *Robert E. Kirschman, Jr.*, Director, *Patricia M. McCarthy*, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, D.C., and *Tracey Sasser*, Assistant General Counsel, U.S. Department of Education, Washington, D.C., for Defendant.

### OPINION AND ORDER

WHEELER, Judge.

In this pre-award bid protest, Plaintiff Emergency Planning Management, Inc. ("EPM") challenges the latest student loan servicing procurement by the Department of Education ("ED"). At issue is the agency's alleged preference for one small business program at the expense of others and its decision to consolidate once-separate services into a single procurement.

EPM is a veteran-owned small business that collects defaulted student debt. EPM contests ED's recent student loan servicing solicitation, called "Next Generation Processing and Servicing Environment" ("Next Gen"), which combines default collection with other student loan servicing work, so that one entity will oversee the "full life-cycle" of a student loan from origination to payoff. Because EPM is a small business specializing in default collection services, it claims that Next Gen's "full life-cycle" structure unfairly precludes it from competing for prime contracts.

EPM argues that the Next Gen's Business Processing Operations ("BPO") solicitation is unlawful because: (1) it consolidates loan servicing and default collection without justification, thereby precluding small business participation; (2) it violates federal laws and Congressional policies regarding debt collectors; (3) it is arbitrary and capricious; and (4) ED failed to adhere to the notification requirements regarding the consolidation of services. The Government responds that the Court recently addressed these exact issues and determined that Next Gen's consolidated structure is justified. See FMS Inv. Corp. v. United States, 144 Fed. Cl. 140, 145–49 (2019).

The parties have filed cross-Motions for Judgment on the Administrative Record, pursuant to Rule 52.1 of the Court. For the reasons explained below, the Court DENIES EPM's motion, and GRANTS the Government's cross-motion.

## Background

This Court previously has provided the detailed history of the solicitation at issue in this case. On December 11, 2015, ED released its first iteration of the Next Gen solicitation. See FMS Inv. Corp. v. United States, 139 Fed. Cl. 221, 223 (2018), amended, 139 Fed. Cl. 439 (2018). In May 2018, after various contract awards, protests, and corrective actions, ED cancelled the solicitation. See id. at 224. A group of Private Collection Agencies ("PCAs") challenged the cancellation decision. In September 2018, this Court ruled that the decision to cancel the solicitation was arbitrary and capricious. Id. at 227.

The 2019 Appropriations Act directed ED to "award no funding for any solicitation for a new federal student loan servicing environment . . . 'unless the environment provides for the full life-cycle of loans from disbursement to payoff.'" FMS Inv. Corp, 144 Fed. Cl. at 145 (citing, and quoting in part, Dep't of Def. and Labor, Health and Hum. Servs., and Educ. Appropriations Act, 2019 and Continuing Appropriations Act, 2019, Pub. L. No. 115-245, Div. B, Title III, 132 Stat. 2981, 3102 (2018) ("2019 Act")). ED interpreted "full life-cycle" and "from disbursement to payoff" to require its new student loan solicitations, Next Gen, to combine loan servicing and default collection work into one solicitation where one entity provides "cradle-to-grave" servicing.

In January 2019, ED reissued three Next Gen solicitations, which added further requirements for small business participation.[1]  The new solicitations include a total small-business subcontracting goal of 32 percent.  See Administrative Record ("AR") 62–63.  Under the new solicitation, offerors were required to submit Small Business Participation Plans ("SBPP").  See AR 534–50 (communications with the Small Business Administration ("SBA") regarding the BPO's SBPP).  The Next Gen solicitation also increased the objectives for Historically Underutilized Business Zone ("HUBZone") small business concerns.  See id.  Congress created the HUBZone program to "provide Federal contracting assistance for qualified small business concerns located in historically underutilized business zones, in an effort to increase employment opportunities, investment, and economic development in those areas."  48 C.F.R. § 19.1301(b) (2000).  The BPO solicitation requires utilization of HUBZone businesses to increase from 19 to 30 percent within two years.  See AR 540.

Shortly thereafter, in February 2019, FMS Investment Corporation, a PCA, filed a complaint with this Court alleging in part that the BPO solicitation inappropriately bundled services.  See FMS Inv. Corp., 144 Fed. Cl. at 143–44.  Over the next six weeks, six more PCAs filed protests.  See id. at 143.  Five PCAs filed a motion for a preliminary injunction—all of which were denied.  See id.  In July 2019, after two PCAs withdrew their protests, this Court held that ED's Next Gen solicitations, including the BPO solicitation at issue here, were not arbitrary and capricious and declined to issue injunctive relief.  See id. at 145 ("ED is clearly complying with the 2019 [Appropriations] Act…").

On July 16, 2019, EPM filed its Complaint and motions for a temporary restraining order and a preliminary injunction.  Dkt. Nos. 1, 5, 6, 7.  On July 23, 2019, the Court heard arguments on the motions and issued an Order denying EPM's request for a temporary restraining order and a preliminary injunction.  Dkt. Nos. 11, 12.  The parties completed briefing on September 19, 2019, and the Court heard oral arguments on September 26, 2019.  Dkt. Nos. 21–29.

## Analysis

I.   Standard of Review

The Tucker Act grants this Court subject-matter jurisdiction over bid protests.  28 U.S.C. § 1491(b)(1) (2012).  In a bid protest, the Court reviews an agency's decision pursuant to the standards set out in the Administrative Procedure Act ("APA").  28 U.S.C. § 1491(b)(4); 5 U.S.C. § 706 (2012).  The APA provides that "a reviewing court shall set aside the agency action if it is arbitrary, capricious, an abuse of discretion, or otherwise not

---

[1] The revised solicitations included three requests for proposals ("RFPs"): (1) the Business Process Operations ("BPO") RFP, (2) the Enhanced Processing Solution ("EPS") RFP, and (3) the Optimal Processing Solution ("OPS") RFP.

in accordance with law." 5 U.S.C. § 706(2)(A); Banknote Corp. of Am., Inc. v. United States, 365 F.3d 1345, 1350–51 (Fed. Cir. 2004) (citation omitted).

Under the APA, a court may set aside a corrective action if it "lack[s] a rational basis." Dell Fed. Sys., L.P. v. United States, 906 F.3d 982, 990 (Fed. Cir. 2018) (citations omitted). The rational basis standard is highly deferential; "a court is not to substitute its judgment for that of the agency." F.C.C. v. Fox Television Stations, Inc., 556 U.S. 502, 514 (2009) (citations omitted); see also Dell Fed. Sys. L.P., 906 F.3d at 992. An agency need only provide a "coherent and reasonable explanation" for its action. Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d 1324, 1333 (Fed. Cir. 2001) (citation omitted). A court will uphold even an agency "decision of less than ideal clarity if the agency's path may reasonably be discerned." Balestra v. United States, 803 F.3d 1363, 1373 (Fed. Cir. 2015) (internal quotation and citations omitted).

## II. The BPO Solicitation

An agency "bundles" or "consolidates" when it combines "two or more procurement requirements that were previously solicited as separate, smaller contracts." Feldman, S., Bundling, Gov't Cont. Guidebook § 4:6 (4th ed. 2018); see also 15 U.S.C. § 632(o)(2). Not all bundling, however, is prohibited. EPM argues that the BPO solicitation's "combination of loan servicing and debt collection[] services are likely to be unsuitable for award to a small-business concern." Dkt. No. 21 at 21.

The Small Business Act ("the Act") provisions relating to bundling state that agencies must "avoid unnecessary and unjustified bundling of contract requirements that precludes small business participation in procurements as prime contractors." 15 U.S.C. § 631(j)(3). Under the Act, agencies that wish to consolidate a solicitation must (1) conduct market research to determine whether consolidation is necessary and justified and (2) notify the SBA with its findings. See 15 U.S.C. § 644(e)(2)(A); FAR § 10.001(c)(2). In addition, the Federal Acquisition Regulation (the "FAR") requires contracting officers to notify incumbent contractors 30 days prior to issuing a bundled solicitation. See FAR §§ 7.107-5, 10.001(c)(2).

An agency, however, enjoys broad discretion to determine its own needs. See Savantage Fin. Servs., Inc. v. United States, 595 F.3d 1282, 1286 (Fed. Cir. 2010); Totolo/King v. United States, 87 Fed. Cl. 680, 695–96 (2009) ("[W]ide discretion is afforded to contracting officers in making responsibility determinations and in determining the amount of information that is required to make a responsibility determination." (internal quotation and citations omitted)). Therefore, a successful protest to an agency's combination of multiple procurement requirements must demonstrate that the consolidation is not rationally related to the agency's needs. See CHE Consulting, Inc. v. United States, 552 F.3d 1351, 1354 (Fed. Cir. 2008); K-Lak Corp. v. United States, 98 Fed. Cl. 1, 5 (2011) ("To show a violation of a regulation or procedure, a claimant must show a

4

clear and prejudicial violation of applicable statutes or regulations." (internal quotation and citations omitted)).

### A. Support for Consolidation

This Court previously determined that ED has a rational basis for consolidating the student loan servicing and collection processes. See FMS Inv. Corp., 144 Fed. Cl. at 144. Although the contractors in FMS Investment Corporation were not small businesses, the analysis of ED's justification for its actions remains unchanged. ED conducted market research and consulted subject matter experts, which included hiring McKinsey & Company, Inc., to identify the "best-in-class collections practices." Dkt. No. 25 at 6 (quoting FMS AR 4–5); see also AR 525–30. ED points out that it also relied on "responses submitted through Phase I" of the Next Gen solicitation to "improve [Next Gen's] delinquency management practices and bring them closer to commercial practice standards." Dkt. No. 25 at 6 (quoting FMS AR 4).

In fact, EPM concedes that not all bundling is prohibited. See Dkt. No. 21 at 28. The Federal Circuit has noted that regardless of whether anti-bundling provisions apply, a procurement may be valid when the agency "conducted extensive market research before determining that consolidation of the procurement requirements was necessary and justified." Tyler Constr. Grp. v. United States, 570 F.3d 1329, 1335 (Fed. Cir. 2009) (internal quotation and citations omitted). Here, as in Tyler, the contracting officer documented the rationale behind seeking a procurement to cover the "full life-cycle" of the loan, which included decreasing borrower's confusion, standardizing systems, ensuring debt collection was not prioritized over borrowers' long-term success, and adhering to congressional directives set forth in the 2019 Appropriations Act.[2] See FMS AR 2–3, 2507–13, 14382–89; Dkt. No. 22 at 6.

EPM largely relies on the same arguments raised in FMS Investment Corporation while hoping for a different outcome. The Court sees no justification for reversing its previous determination that ED provided a "coherent and reasonable explanation" for Next Gen's consolidation. See FMS Inv. Corp., 144 Fed. Cl. at 146 (internal quotation and citations omitted). The Court will not infringe on ED's wide discretion to determine its own needs.

### B. Notification Requirements

Next, EPM argues that ED did not provide the proper 30-day notice of its intent to bundle the contracts. See Compl. ¶¶ 62, 64, 65, 69; Dkt. No. 23 at 17; see also FAR

---

[2] A more in-depth analysis of why ED's consolidation of the Next Gen solicitation is rational can be found in this Court's July 31, 2019 opinion in FMS Investment Corporation, 144 Fed. Cl. at 145–47.

§ 7.107-5(a)(1); 13 C.F.R. § 125.2(d)(5).  However, ED maintains that any failure to fully comply with the notification requirements did not harm EPM.  See Dkt. No. 22 at 10–11.

To support its contentions, EPM relies on Sigmatech, Inc., B-296401, Aug. 10, 2005, 2005 CPD ¶ 156.  In Sigmatech, the Government Accountability Office ("GAO") held that the Army improperly bundled a solicitation when it failed to comply with the FAR's notification requirements.  See id. (citing FAR §§ 7.107(a), (b), 10.001(c)(2), 19.202-1).  Rather than denying its noncompliance, the Army argued that the FAR provisions were not applicable to it.  The GAO sustained the protest because the Army did not: (1) notify the incumbent small business contractor of its intent to bundle, (2) provide a bundling analysis, or (3) notify the SBA of its acquisition strategy.  See id.

EPM's reliance on Sigmatech is misplaced.  Even if ED failed to notify "each small business performing a contract," the fact that EPM—unlike Sigmatech—is not an incumbent contractor severely undercuts its argument.  See FAR §§ 7.107-5(a)(1), 10.001(c)(2) (requiring notification to any "incumbent small business concerns"); Sigmatech, B-296401, Aug. 10, 2005, 2005 CPD ¶ 156 (citing failure to notify incumbent contractor as a factor in granting the protest).

EPM also accuses ED of not consulting with the appropriate Small Business Specialist in violation of FAR § 7.104(d).  See Compl. at ¶¶ 69, 84, 89–91; Dkt. No. 23 at 18.  Once again, the facts of Sigmatech, and this case diverge.  Unlike in Sigmatech, the administrative record here indicates that ED not only notified the SBA of the BPO solicitation but also provided the SBA with drafts of the small business participation plan.  See Dkt. No. 22 at 11; AR 534–50 (email chain with Martina Williams, SBA Procurement Center Representative).

EPM further claims that ED's failure to adhere to the notification requirements prevented it from proposing alternative procurement structures.  See Dkt. No. 23 at 18.  This argument also fails.  This is not the first iteration of the Next Gen solicitation.  The prior solicitations also consolidated loan and default services.  In any event, EPM was aware of the solicitation, as it timely filed this protest.

        C.     Small Business Commitment

In an effort to distinguish its case from FMS Investment Corporation, EPM challenges the consolidation of these services, based on the requirements of the Small Business Act, the Competition in Contracting Act ("CICA"), and the FAR.

During the contracting officer's research, the agency identified approximately sixty entities that were interested in ED's solicitation.  See AR 533.  The Phase I solicitation resulted in 40 entities responding, four of which were small businesses.  See id.  After the contracting officer analyzed their capabilities, none of the four small businesses advanced

to Phase 2. See id. Based on the solicitation and research, the contracting officer concluded that "there was not a reasonable expectation of obtaining offers from two or more responsible small business concerns that are competitive in terms of market prices, quality, and delivery," and therefore the agency was not obligated to set the procurement aside for small businesses. Id.

Given the detail and reasoning contained in the AR, EPM's claim that ED's handling of the BPO solicitation was contrary to the statutory and regulatory provisions supporting small business participation must fail. ED was conscious of the potential effects on small businesses and endeavored to promote their participation. For example, the BPO solicitation is explicitly "open to all entities…including small businesses" and permits entities to associate together as teams or joint ventures when submitting proposals. See AR 533, 540. ED also requires offerors to submit a detailed Small Business Participation Plan which includes a goal that small businesses perform 32 percent of the subcontracted work. See AR 62–63; FAR 7.107-4(b)(4). Even if the Court were to disagree with the contracting officer's determination, the market research establishes, at a minimum, a rational basis for its conclusion.

The Court's prior finding that ED appropriately exercised its discretion in structuring its Next Gen solicitations remains unchanged. EPM, like FMS, challenges Next Gen's consolidation of loan and default services. In this case, the fact that EPM is a small business does not affect ED's justification for its structuring of the BPO solicitation. EPM's notification arguments are also unpersuasive. EPM fails to demonstrate how any defect in ED's compliance with FAR Part 7's procedural requirements prejudiced it. Therefore, the Court sees no reason to substitute its judgment for that of the agency.

### III.    Small Business Participation Plan

EPM also accuses ED of unreasonably favoring HUBZone businesses at the expense of other small businesses. See Dkt. No. 21 at 30. ED counters that a contracting officer's decision is a matter of business judgment entitled to a "presumption of regularity." Dkt. No. 22 at 7 (quoting Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 415 (1971)).

Congress enacted the Small Business Act in 1953 to protect the interests of small business. 15 U.S.C. § 631(a). The purpose of the Act is to ensure the attainment of a "Government-wide goal for participation by small business concerns [in government contracts] ... [of] not less than 23 percent of the total value of all prime contracts for each fiscal year." Id. § 644(g). In addition to aiding small businesses in general, the Act contains programs that favor certain categories of small business. One such program is the HUBZone program which encourages participation of small businesses located in economically disadvantaged or distressed areas. See id. § 657(a). Under the HUBZone

7

program, three percent of the total value of federal contract awards should be set aside for HUBZone businesses. See id. § 644(g).

A contracting officer's decision invokes a "highly deferential rational basis review." See Weeks Marine, Inc. v. United States, 575 F.3d 1352, 1368–69 (Fed. Cir. 2009). As ED pointed out, "it is well established that procurement officials are entitled to a strong presumption of regularity and good faith." Dkt. No. 22 at 20 (quoting Am-Pro Protective Agency, Inc. v. United States, 281 F.3d 1234, 1239–41 (Fed. Cir. 2002)).

Next Gen's HUBZone set asides do not thwart the overarching goals of the Act. First, the Act's target of 23 percent for small business participation in federal contract awards incorporates several types of small businesses programs, including the HUBZone program. Moreover, HUBZone's three percent target is a minimum—not a cap. Next Gen's SBPP explicitly states that the HUBZone requirements "may result in total small business subcontracting exceeding 32%." AR at 63.

Despite EPM's contention, the HUBZone goals are not anti-competitive. Compl. ¶ 52. No statutes or regulations expressly prohibit ED from establishing larger HUBZone participation goals. Rather, the HUBZone goals create an additional basis on which potential offerors must now compete. That is, potential offerors will also be evaluated on their ability to find and partner with HUBZone companies.

Finally, EPM maintains that the HUBZone goals are irrational, prejudicial, and without support. Compl. ¶¶ 82–102. ED rebuts this argument and points to the AR to support its claim that the SBA reviewed and endorsed ED's SBPP, including its HUBZone goals. AR 345, 534–50. The Court also rejects EPM's contention that the HUBZone goals are prejudicial and prevent small businesses from competing as a prime contractor. Compl. ¶ 96. EPM fails to establish how these goals cause it to suffer a redressable competitive harm distinct from other entities. In fact, EPM concedes that "possibly [no] large business offerors" could meet the HUBZone goals. Dkt. No. 23 at 20.

IV. Permanent Injunction

Under its bid protest jurisdiction, the Court has the power to issue an injunction pursuant to 28 U.S.C. § 1491(b). See PGBA, LLC v. United States, 389 F.3d 1219, 1223 (Fed. Cir. 2004) ("We give deference to the Court of Federal Claims' decision to grant or deny injunctive relief, only disturbing the court's decision if it abused its discretion."). In deciding whether a permanent injunction is proper, a court considers (1) whether the plaintiff has succeeded on the merits; (2) whether the plaintiff will suffer irreparable harm without an injunction; (3) whether the balance of the hardships favors an injunction; and (4) whether an injunction is in the public interest. See PGBA, LLC, 389 F.3d at 1228–29; Dyonyx, L.P. v. United States, 83 Fed. Cl. 460, 467 (2008) (noting that injunctive relief is an "extraordinary" remedy).

First, as explained above, EPM has not succeeded on the merits.  Second, EPM's irreparable harm is unclear.  EPM contends that the BPO solicitation prohibits it from acting as a prime contractor.  See Dkt. No. 7 at 29.  As a result, EPM proffers that it will lose the opportunity to make a profit and will have to make "significant" employee layoffs. Dkt. No. 7 at 35.  EPM's arguments, however, ignore that it may still compete through a teaming arrangement or as a subcontractor.  Moreover, this Court cannot order ED to assign EPM the accounts to service.  Even if ED restructured the Next Gen solicitations to incorporate EPM's objections, EPM would not be entitled to some minimum amount of business.

EPM has failed to prove that ED's actions were arbitrary, capricious, or otherwise not in accordance with the law.  In this bid protest, ED's actions were rationally related to the risks identified throughout the prior solicitation and related bid protest lawsuits.  An injunction would delay Next Gen and ED's cradle-to-grave servicing goal, forcing ED to commit resources to a PCA solicitation that it no longer needs.  Finally, EPM failed to establish that ED's actions were based on clear and prejudicial violations of an applicable procurement statute or regulation.  In the Court's view, refraining from interfering in a procurement can also serve the public interest.  The Court, therefore, finds no legally compelling reason to issue an injunction.

## Conclusion

For the reasons set forth above, the Court DENIES EPM's motion for judgment on the administrative record and DENIES EPM's motion to permanently enjoin the Department of Education from proceeding with the Next Gen solicitations.  The Court GRANTS the Government's motion for judgment on the administrative record.  The Clerk of the Court is directed to enter judgment for the Government.  No costs.

IT IS SO ORDERED.

s/Thomas C. Wheeler
THOMAS C. WHEELER
Judge