# IN THE UNITED STATES COURT OF FEDERAL CLAIMS
## BID PROTEST

| | |
|---|---|
| EMERGENCY PLANNING MANAGEMENT, INC., ) ) ) Plaintiff, ) ) ) v. ) ) THE UNITED STATES, ) ) Defendant. ) _____) | Case No. 19-1024<br><br>Judge Thomas C. Wheeler |

## PLAINTIFF'S MOTION TO STAY PENDING APPEAL

Dated:   January 2, 2020                                Respectfully submitted,

**OFFIT KURMAN, P.A.**

*Of Counsel*:

Joshua Duvall
Matross Edwards LLC
1717 K Street NW, Suite 900
Washington, DC 20006

/s/ *Edward DeLisle*_____
Edward DeLisle
Offit Kurman, P.A.
401 Plymouth Road
Plymouth Meeting, PA 19462
267.338.1321
edelisle@offitkurman.com

*Attorney of Record for Plaintiff*
*Emergency Planning Management, Inc.*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES……………………………………………………………. iii

PLAINTIFF'S MOTION TO STAY PENDING APPEAL……………………………1

INTRODUCTION . …………………………………………………………………....1

ARGUMENT……………………………………………………...…………..................2

I.   EPM'S APPEAL PRESENTS A SUBSTANTIAL CASE ON THE MERITS…. 4

II.  THE EQUITIES DECIDEDLY FAVOR EPM………………………………….. 7

    A.   EPM Will Suffer Irreparable Harm Absent a Stay and Injunction………..8

    B.   A Stay and Injunction Will Not Substantially Injure the Agency
        or Other Interested Parties………………………………………………...9

    C.   The Public Interest Favors a Stay and Injunction………………………..10

CONCLUSION ………………………………………………………………………….12

**TABLE OF AUTHORITIES**

**Cases** **Page**

*Cincom Sys. v. U.S.*,
    37 Fed. Cl. 266 (1997)……………………………………………………………...10

*CW Gov't Travel, Inc. v. U.S.*,
    61 Fed. Cl. 559 (2004)……………………………………………………………...11

*Emergency Planning Management, Inc. v. U.S.*,
    145 Fed. Cl. 77 (2019)…………………………………………………………….... 5

*Hamilton Watch Co. v. Benrus Watch Co.*,
    206 F.2d 738 (2d Cir. 1953)……………………………………………………………3

*Hilton v. Braunskill*,
    481 U.S. 770 (1987)……………………………………………………………………3

*Insight Sys. Corp. v. U.S.*,
    110 Fed. Cl. 564, 582 (2013)………………………………………………………...8

*Jacobson v. Lee*,
    1 F.3d 1251 (Fed. Cir. 1993)…………………………………………………………4

*Magellan Corp. v. U.S.*,
    27 Fed. Cl. 446 (1993)……………………………………………………………...10

*OAO Corp. v. U.S.*,
    49 Fed. Cl. 478 (2001)……………………………………………………………….2

*Palantir USG, Inc. v. U.S.*,
    129 Fed. Cl. 218 (2016)……………………………………………………………...8

*PGBA, LLC. v. U.S.*,
    57 Fed. Cl. 655 (2003)……………………………………………………………….9

*PDS Consultants, Inc. v. U.S.*,
    133 Fed. Cl. 810 (2017)……………………………………………………*passim*

*Standard Havens Prods., Inc. v. Gencor Indus., Inc.*,
    897 F.2d 511 (Fed. Cir. 1990)……………………………………………………..3, 7

*Tenacre Found. v. INS*,
    78 F.3d 693   (D.C.Cir. 1996)………………………………………………………8

*Tyler Constr. Group v. U.S.*,
    83 Fed. Cl. 94 (2008)……………………………………………………………...4

*Tyler Const. Group v. U.S.*,
    570 F.3d 1329 (Fed. Cir. 2009)……………………………………………….....4

*United Int'l Investigative Servs., Inc., v. U.S.*,
    41 Fed. Cl. 312 (1998)……………………………………………………………..11

*Weeks Marine, Inc. v. U.S.*,
    79 Fed. Cl. 22 (2007)……………………………………………………………….11

*Wis. Gas Co. v. FERC*,
    758 F.2d 669 (D.C. Cir. 1985)……………………………………………………8

**Rules**

RCFC 62………………………………………………………………………………..1, 2

**Regulations**

FAR Part 7……………………………………………………………………………...... 5, 6

**PLAINTIFF'S MOTION TO STAY PENDING APPEAL**

Pursuant to Rule 62(d) of the Rules of the Court of Federal Claims ("RCFC"), Plaintiff Emergency Planning Management, Inc. ("EPM"), by and through its undersigned counsel, moves to stay this Court's October 2, 2019 Opinion and Order (ECF No. 29) and the associated entry of Judgment (ECF No. 30) pending the resolution of EPM's appeal to the U.S. Court of Appeals for the Federal Circuit (the "Federal Circuit"). EPM also requests that the Court enjoin the U.S. Department of Education ("ED" or "Agency") from making any awards under the Next Generation Processing and Servicing Environment ("NextGen") Business Process Operations Solicitation No. 91003119R0008 (the "Solicitation") during the pendency of EPM's appeal.

**INTRODUCTION**

EPM is appealing the Court's decision to address a critical issue facing EPM: whether the Agency's action to bundle loan servicing with debt collection services may withstand judicial review even where the Agency fails to adhere to the mandatory, statutory and regulatory procedures that were specifically enacted by Congress to protect small businesses from being excluded from prime contract opportunities on Federal contracts due to unnecessary and unjustified bundling.[1]

Given that the Federal Circuit has not had an opportunity to hear a protest concerning an agency's wholesale disregard of the statutory and regulatory regimes

---

[1] *See Small Business Reauthorization Act of 1997*, P.L. 105-135, §§ 411-415 & 417, 111 Stat. 2617-20 (Dec. 2, 1997) (codified, as amended, in 15 U.S.C. § 631(j), § 632(o), and § 644(e)); *see also Small Business Jobs Act of 2010*, P.L. 111-240, §§ 1312-1313 124 Stat. 2538-39 (Sept. 27, 2010) (codified in 15 U.S.C. §§644(q), 657q); *see also generally* 81 Fed. Reg. 67763 (amending the Federal Acquisition Regulation to implement §§ 1312-1313 of the Small Business Jobs Act of 2010).

1

discussed throughout EPM's protest, that equitable factors decidedly favor EPM, and that the U.S. Federal procurement system has a rich history of encouraging and protecting small business participation in taxpayer-funded programs, this Court should grant this motion. In so doing, it would allow EPM to pursue its appeal without fear of the catastrophic harm that EPM will unquestionably face should the Agency issue awards during the pendency of EPM's appeal.

As discussed below, the Court should grant this motion because EPM's appeal will present a substantial case on the merits and equitable factors decidedly favor EPM.

## ARGUMENT

Pursuant to RCFC 62(d),[2] the Court has the authority to grant an injunction pending appeal. RCFC 62(d) provides that "[w]hile an appeal is pending from an interlocutory order or final judgment that grants, continues, modifies, refuses, dissolves, or refuses to dissolve or modify an injunction, the court may suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights." RCFC 62(d); *see also PDS Consultants, Inc. v. U.S.,* 133 Fed. Cl. 810 (2017) (granting defendant-intervenor's motion under RCFC 62(c) for a stay pending appeal). Because an injunction is an "extraoridary and drastic remedy," the movant carries the burden of persuasion. *Id*. (citing *OAO Corp. v. U.S.*, 49 Fed. Cl. 478, 480 (2001)).

In determining whether to grant an injunction under RCFC 62(d), the Court must consider the following factors: "(1) whether the movant has made a strong showing that it

---

[2] On July 1, 2019, the U.S. Court of Federal Claims issued its amended rules. Among the many changes, the Court moved RCFC 62(c) to RCFC 62(d) and changed some of the language. These changes are in accordance with revisions to the Federal Rules of Civil Procedure that became effective on December 1, 2018.

2

is likely to succeed on the merits; (2) whether the movant will be irreparably injured absent an injunction; (3) whether issuance of the injunction will substantially injure the other interested parties; and (4) where the public interest lies." *PDS Consultants*, 133 Fed. Cl. at 816 (quoting *Standard Havens Prods., Inc. v. Gencor Indus., Inc.*, 897 F.2d 511, 512 (Fed. Cir. 1990). Notably, each factor is not necessarily entitled to equal weight. *Id*. Indeed, the four factors cannot cannot be "reduced to a set of rigid rules." *Standard Havens*, 897 F.3d at 512–13.

Importantly, the Court's flexible consideration of these four factors may allow an injunction pending appeal even where the movant cannot make a showing that it has a strong likelihood of success on appeal. *PDS Consultants*, 133 Fed. Cl. at 816. That is, the court may issue an injunction pending appeal where the movant "'demonstrate[s] a *substantial* case on the merits,' *provided* the other factors militate in the movant's favor." *Id*. (quoting *Hilton v. Braunskill*, 481 U.S. 770, 778 (1987)) (emphasis added). "[I]f the other elements are present (i.e., the balance of hardships tips decidedly toward plaintiff), it will ordinarily be enough that the plaintiff has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation. . ." *Stand. Havens*, 897 F.2d at 513 (citing *Hamilton Watch Co. v. Benrus Watch Co.*, 206 F.2d 738, 740 (2d Cir. 1953).

As discussed below, EPM's appeal will present a substantial case on the merits and the equities decidedly favor EPM. Accordingly, the Court should grant this motion and issue an injunction.

3

I.  **EPM'S APPEAL PRESENTS A SUBSTANTIAL CASE ON THE MERITS[3]**

EPM's appeal will address questions that are "so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation." *Id*.  An issue of first impression "weighs in favor of finding a 'substantial case on the merits,' though not decisively.  *See, e.g., Jacobson v. Lee*, 1 F.3d 1251 (Fed. Cir. 1993) ("These are important questions, some of first impression, that deserve careful consideration by this court."); *see also PDS Consultants*, 133 Fed. Cl. at 816 ("Because this is an issue of first impression involving important contracting preferences, the court finds that this is a 'substantial case on the merits.'").

Here, EPM's appeal will present important, serious, and substantial issues of first impression for at least two reasons.  *First*, while the Federal Circuit has addressed bundling in one instance, that appeal did not involve the agency's wholesale departure from the mandatory procedural requirements to justify bundling.  *See Tyler Const. Group v. U.S.*, 570 F.3d 1329 (Fed. Cir. 2009).  In *Tyler Const.*, the Federal Circuit affirmed the lower court's determination that bundling was "necessary and justified" in a procurement where the agency entered a "Determination and Findings for Consolidation" and identified several benefits that were documented to comply with the regulatory and statutory procedures for bundling to be justified.  *Tyler Constr. Group v. U.S.*, 83 Fed. Cl. 94 (2008), *aff'd*, *Tyler Const. Group v. U.S.*, 570 F.3d 1329 (Fed. Cir. 2009).

---

[3] Given that the Court denied EPM's motion for judgment on the administrative record, EPM does not discuss why it is likely to succeed on appeal.  *See PDS Consultants*, 133 Fed. Cl. at 817 ("Thus, while the court rejected IFB's arguments, it is not possible to determine the likelihood of success on appeal.").

On the other hand, unlike *Tyler Const.*, ED did not follow the statutory and regulatory framework for the bundled Solicitation to be "necessary and justified," and ED did not comply with law and regulation to document the benefits and substantial benefits that it would receive as a result of the bundling. *See, e.g.*, FAR §§ 7.107-3, 7.107-4, 7.107-5. Instead of following the mandatory procedures, ED simply relied on the Appropriations Act and other parts of the record to justify its actions. *See Emergency Planning Management, Inc. v. U.S.*, 145 Fed. Cl. 77, 81-82 (2019).

The Appropriations Act contains no reference to the FAR Part 7 procedures and it does not waive the Agency's requirements under the Small Business Act, CICA or the FAR. Moreover, either individually or collectively, none of the Agency's reasons were consistent with the mandatory procedural inquiry (including the notification requirements) that Congress enacted in the Small Business Act, which was implemented under the FAR. So, while it may be true that the Agency articulated some justification for its actions, the Agency nonetheless failed to follow to the mandatory, statutory and regulatory procedural inquiry that Congress enacted when it added bundling provisions to the Small Business Act.[4]

---

[4] *See generally* S. REPT. NO. 105-62, at 21–22, 35–37 (1997) (discussing new bundling provisions and feedback from small businesses and trade association letters on the serious consequences of contract bundling, including that a "small business is being streamlined right out of the procurement system[,]" and that the "letters noted that the trend in Federal contracting has been moving towards larger and larger solicitation packages that are beyond the capability of small business.").

The Report also notes other policy reasons for implementing these changes and, importantly, that Congress characterized the bundling provisions as "procedures to be followed":

*Second*, and relatedly, the Federal Circuit has yet to fully examine the mandatory nature of the bundling procedures specifically set forth in FAR Part 7, particularly where, as here, the Agency believes that it has received a Congressional directive to proceed with an act of bundling or consolidation. To uphold ED's actions would empower Federal procurement officials to forego the FAR Part 7 bundling procedures so long as they can point to an appropriation act, or similar Congressional action, and reasonably interpret it as a mandate to bundle at the expense of small business prime contractor participation.

Even worse, it signals to other Federal agencies and procurement officials that they can avoid following the mandatory procedural requirements so long as they can point to various portions of the record to support their decision to bundle. That is not what Congress intended when it enacted the detailed bundling procedural inquiry. Otherwise, the procedures would ring hollow, as Federal agency decision-making is afforded broad deference under the Administrative Procedures Act. Guidance from the Federal Circuit on these all too important issues is paramount not only to EPM—who is

---

> "The Federal government should not abandon the innovative and competitive small business market for the purposes of administrative convenience. The purpose of [the bundling] section is to ensure that actions are not taken arbitrarily that have the effect of shifting Federal contracting out of the reach of many small businesses that have previously contracted with the government or who wish to bid on Federal contracts."
>
> "This amendment . . . *establishes the procedures to be followed* by contracting activities and the Small Business Administration (SBA) in regards to the bundling of contract requirements[.]" (emphasis added).

Notably, Congress added more substance to the bundling procedures when it passed the Small Business Jobs Act of 2010. *See supra* note 1.

6

currently being deprived of an opportunity to compete as a prime contractor for debt collection services under the Solicitation—but also to other small businesses that may encounter contract bundling by other Federal agencies in the future.

At bottom, EPM's appeal involves important, serious, and substantial issues of first impression, and EPM submits that it satisfies the "substantial case on the merits" prong. Therefore, the Court must next turn to the remaining equitable factors in determining whether to grant an injunction. As shown below, the remaining factors decidedly favor EPM so the Court should grant this motion.

## II.   THE EQUITIES DECIDEDLY FAVOR EPM

As stated above, EPM's appeal is a "substantial case on the merits" beause it involves serious, substantial, and important matters of first impression. In addition, the equities also decidedly favor EPM. The three remaining equitable factors that the Court must consider are "[1] whether the movant will be irreparably injured absent an injunction; [2] whether issuance of the injunction will substantially injure the other interested parties; and [3] where the public interest lies." *PDS Consultants*, 133 Fed. Cl. at 816 (quoting *Standard Havens Prods., Inc. v. Gencor Indus., Inc.*, 897 F.2d 511, 512 (Fed. Cir. 1990)).

In short, EPM will suffer irreparable harm because the Agency's actions deprived it from the opportunity to compete for debt collection services as a prime contractor under the Solicitation, an injunction will not substantially injure the Agency or other interested parties both because no awards have been made under the Solicitation and because the omni-channel digital platform has not yet been built (performance under Solicitaiton is predicated on a functioning digital platform), and, finally, public interest

favors preserving the integrity of the Federal procurement system and ensuring small businesses have a fair opportunity to compete for prime contract awards.

### A.   EPM Will Suffer Irreparable Harm Absent a Stay and Injunction

To constitute irreparable harm, the alleged injury must be "certain and great," and not merely theoretical. *Tenacre Found. v. INS*, 78 F.3d 693, 695 (D.C.Cir. 1996). Monetary loss which threatens the very existence of a concern's business constitutes irreparable harm sufficient to establish entitlement to injunctive relief. *Wis. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985).

In addition, courts have recognized that the loss of the ability to compete for government contracts constitutes significant harm sufficient to establish entitlement to injunctive relief. *Insight Sys. Corp. v. U.S.*, 110 Fed. Cl. 564, 582 (2013); *Palantir USG, Inc. v. U.S.*, 129 Fed. Cl. 218, 291 (2016) (stating "[t]he Court of Federal Claims has repeatedly held that a protester suffers irreparable harm if it is deprived of the opportunity to compete fairly for a contract.") (citations omitted).

Here, EPM maintains that the Agency's actions cause substantial, irreparable harm because the Agency failed to follow the mandatory procedures that Congress enacted to protect small businesses, like EPM, from the bundling of contract requirements in a maner that is *not* "necessary and justified."  The bundling regime the Congress enacted provides the procedural requirements that ED was required to undertake as part of its consideration to engage in bundling even with its interpretation of the Appropriations Act as constituting a Congressional directive to do so.  Thus absent injunctive relief, EPM, and all other small business PCAs, will be completely and irreparably precluded from participating as prime contractors in Federal student loan debt

collections in *perpetuity*. Further, EPM's business model is predicated on its ability to continue growing in this sector, such that it can compete as a prime contractor for debt collections services on unrestricted procurements.

At bottom, the Agency's actions have deprived EPM from the opportunity to compete as a prime contractor under the Solicitation. The impact of this lost opportunity causes EPM serious monetary harm that threatens the business as a going concern. As a result, EPM satisfies this prong and the Court should grant this motion and issue an injunction.

> **B. A Stay and Injunction Will Not Substantially Injure the Agency or Other Interested Parties**

In stark contrast to the harm EPM will suffer absent an injunction, the harms, if any, to the Agency or other interested parties pales in comparison. Indeed, in bid protests, the harm suffered by the Government must be exceptional to warrant a denial of injunctive relief. *PGBA, LLC. v. U.S.*, 57 Fed. Cl. 655, 663 (2003) (finding that harm caused to the Government by inconvenience or a delay in performance is generally less significant than the harm caused to a bid protester if the protest is ultimately sustained).

Here, the Government will likely suffer minimal, if any, harm should the Court grant the stay. Specifically, at this stage of the NextGen procurement, an injunction will not harm the Agency or other interested parties because the performance of services sought under the Solicitation will not commence until the omni-channel digital platform is complete.[5]

---

[5] The other two solicitations under the NextGen environment are the NextGen Optimal Processing Solution (Solicitation No. 91003119R0007) ("OPS Solicitation") and the

Besides, there is no reason to believe that the NextGen Procurement or this Solicitation is an emergency procurement, or that the Agency would be adversely impacted if the issuance of the award(s) under the Solicitation is delayed for a limited amount of time. The Agency chose to bundle loan servicing with debt collections services without first following the mandatory, statutory and regulatory procedures that Congress enacted to protect small businesses against bundling of contract requirements; therefore, to the extent that there is any burden to be borne, the Agency should be the party to bear it. *Id*.

At bottom, an injunction pending appeal will not substantially injure the Agency or other parties because the omni-channel digital platform is not yet operational. As a result, EPM also satisfies this prong as the harm to EPM outweighs the harm to ED or other interested parties. Therefore, the Court should grant this motion and issue an injunction.

**C.     The Public Interest Favors a Stay and Injunction**

Generally, the public interest is served by ensuring fair and open competition in the procurement process. *Cincom Sys. v. U.S.*, 37 Fed. Cl. 266, 269 (1997) (citing *Magellan Corp. v. U.S.*, 27 Fed. Cl. 446, 448 (1993)). This is particualrly true where Congress has specifically enacted legislation to protect small businesses from unnecessary and unjustified bundling. Moreover, it is a well-settled principle that there is

---

NextGen Enhanced Processing Solution (Solicitation No. 91003119R0005) ("EPS Solicitation"). Under the OPS Solicitation, and pursuant to the Contract Opportunities website (https://beta.sam.gov), the proposal deadline was postponed pursuant to an amendment posted on November 12, 2019. Under the EPS Solicitation, and pursuant to the Contract Opportunities website (https://beta.sam.gov), it appears that proposals have been submitted but no awards have been made.

an overriding public interest in preserving the integrity of the Federal procurement process by requiring the Government to follow its procurement statutes and regulations. *CW Gov't Travel, Inc. v. U.S.*, 61 Fed. Cl. 559, 576 (2004) (citing *United Int'l Investigative Servs., Inc., v. U.S.*, 41 Fed. Cl. 312, 323 (1998)) (holding that the "public has a strong interest in preserving the integrity of the procurement process."). Additionally, this Court has acknowledged that the public interest is served by, "fostering increased small business participation," in Federal procurement. *Weeks Marine, Inc. v. U.S.*, 79 Fed. Cl. 22, 37 (2007).

As set forth above, EPM's appeal will involve serious, important, and substantial matters of first impression before the Federal Circuit concerning the statutory and regulatory regimes that Congress enacted to protect small businesses from unnecessary and unjustified bundling. EPM maintains that the Agency's actions violated law and regulation; therefore, the public interest will be served by an injunction because it will preserve the integrity of the procurement process during the pendency of EPM's appeal. Public interest is also served by protecting small business participation in Federal contracts and by ensuring that billions of taxpayer dollars are not spent on a procurement that was not conducted in accordance with the procedural regime that Congress enacted. Therefore, it is in the public interest for the Court to issue injunctive relief.

## **CONCLUSION**

For the foregoing reasons, EPM respectfully requests that the Court stay its Order and Judgment, and enjoin the Agency from making any awards under the Solicitation pending resolution of EPM's appeal.

Dated:   January 2, 2020 	Respectfully submitted,

**OFFIT KURMAN, P.A.**

*Of Counsel*:

Joshua Duvall
Matross Edwards LLC
1717 K Street NW, Suite 900
Washington, DC 20006

  /s/ *Edward DeLisle*
Edward DeLisle
Offit Kurman, P.A.
401 Plymouth Road
Plymouth Meeting, PA 19462
267.338.1321
edelisle@offitkurman.com

*Attorney of Record for Plaintiff*
*Emergency Planning Management, Inc.*

**CERTIFICATE OF SERVICE**

    I hereby certify that, on January 2, 2020, a true and correct copy of the foregoing was electronically filed with the Clerk of Court using the Court's Case Management/Electronic Case Files ("CM/ECF") system, which will send notification to all counsel of record in this matter who are registered with the Court's CM/ECF system.

                                             /s/ *Joshua Duvall*
                                             Joshua Duvall